3    267
e31   143
31   193

3    267
32   283
e32   296

3    267
34   102

3    267
36   539

[No. 866.  Decided December 7, 1891.]

H. L. MARSTON AND F. E. PARKER, *Petitioner*, v. T. J. HUMES, *Judge of the Superior Court of King County*, W. B. SPENCER, *Clerk of said Court*, AND J. H. MCGRAW, *Respondents*.

STATUTES—AMENDMENT—SUBJECT-MATTER—TITLES—CODIFICATION—JUDGMENT—VACATION.

An amendment to § 109, Code 1881, taking away the five months' limitation on the modification of judgments rendered, is operative upon a judgment rendered ten months prior to the passage of the amendment, and as other provisions of the code allow the vacation and modification of judgments within one year after rendition, such judgment not being vested, it was competent for the legislature to extend or change the time within which it could be attacked.

The subject-matter of the act amending § 109, Code 1881, is included within the title of "An act relating to pleadings in civil actions, and amending §§ 76, 77 and 109 of the Code of Washington of 1881," as said § 109 was contained in the chapter of the code relating to pleadings, and as the relief sought thereunder is always obtained by filing some paper in the nature of a pleading.

The Code of 1881 is a valid and binding body of laws, arranged and consecutively sectionized under authority of the legislature of 1881, from laws revised and reënacted by that body, and ratified by subsequent legislatures by constant reference thereto as the Code of 1881.

A section of the code may be amended by an act under a title which simply provides for the amendment of such section by its number, without any designation of the subject-matter of the · section to be amended.

*Original Application for Certiorari.*

The facts in this case are stated in the opinion.

*Austin & Baker*, for petitioners.

*Preston, Carr & Preston*, for respondents.

The opinion of the court was delivered by

HOYT, J.—It appears from the petition filed herein that petitioners duly obtained judgment in the superior court of King county against John H. McGraw, one of the defendants herein; that at the time of the rendition of such judgment said superior court had jurisdiction of the subject-matter of the action, and of the person of the said John H. McGraw. That said judgment remained in full force on the records of said court for more than one year after its rendition. That during said year no appeal had been taken, nor had any proceedings been instituted in said superior court to reverse, modify or set aside said judgment. That on the 12th day of October, 1891, and when said judgment was in full force, and a part of the records of said county, and entirely unsatisfied, one of the other defendants, the Hon. T. J. Humes, one of the judges of said superior court of King county, made and caused to be entered in the cause in which said judgment was rendered the following order:

" This cause came on regularly to be heard in open court on this 10th day of October, 1891, before the Honorable T. J. Humes, one of the judges of said court, upon the motion of the defendant, J. H. McGraw, that the judgment heretofore, on, to wit, the 2d day of August, 1890, entered herein against him, the said J. H. McGraw, for the sum of $850 and costs, and for the return of certain personal property, or in case a return of said property could not be had, for judgment against him for the additional sum of $2,650.92, be vacated; the said J. H. McGraw appearing by his attorneys, the Hon. J. A. Stratton and Messrs. Preston, Carr & Preston, and the plaintiffs appearing by their attorneys, Messrs. Austin & Baker.

"After hearing and considering the affidavits filed herein in support of the motion, and the counter affidavit of Fred Page Tustin, and hearing argument of counsel, and the court being fully advised in the premises, it is by the court

here and now ordered that, upon the payment by the defendant, J. H. McGraw, of the costs of said action to this date, the said judgment be vacated and set aside.

"And now, on this 12th day of October, 1891, it appearing to the court that said costs have been by the defendant fully paid, it is here and now ordered that the judgment heretofore, on the second day of August, 1890, rendered herein against the said defendant, J. H. McGraw, and the whole and every part thereof, be and the same is hereby vacated and set aside.

"Further ordered that the defendant McGraw have until October 25, 1891, to file his answer herein.

"Dated at Seattle this 12th day of October, 1891.

T. J. HUMES, <i>Judge.</i>"

And the petitioners allege that the action of said judge, in making and entering said order, was in excess of the jurisdiction of said court, and that the order so entered was and is absolutely void; that so long as the same remains apparently in force they could not collect their said judgment, and that for that reason they were entitled to have the record certified here, and the said order set aside as having been made without jurisdiction.

The particular grounds upon which the court made said order do not appear in the petition herein, and this being so, it is conceded in the argument that if said court had the power in any case to vacate a judgment regularly entered after the expiration of one year from the date of the rendition thereof, the petition should be denied; but it is contended that, under our statutes, the power of the court to interfere with a judgment so entered was expressly limited to one year, and that, as one year had elapsed in this case, the court was powerless to relieve the defendant under any circumstances that might be made to appear. Some other questions were argued, but the conclusion to which we have come as to the statute law of this state on the subject of this controversy makes them immaterial.

The provisions of the Code of 1881, so far as they are

material to this inquiry, are contained in §§ 437, 438
and 439, contained in the chapter relating to the reversal,
vacation and modification of judgments in the courts in
which rendered, and in § 109 of the chapter relating
to mistakes in pleadings, and amendments. Under the
provisions of the first three sections above mentioned, the
trial court is authorized to vacate judgments for certain
reasons therein specified, but the time in which this may
be done is limited to one year; and by the provisions of
section 109, above mentioned, the court was likewise al-
lowed to vacate a judgment within a reasonable time, not
exceeding five months after the adjournment of the term
at which it was rendered. And if these provisions of
the code are now in force, the contention of the peti-
tioners that under the circumstances of this case their
interest in the judgment became vested at the end of one
year, so that the trial court could not interfere therewith,
must be sustained. The legislature of 1891 (Laws 1891,
p. 44), however, amended, or attempted to amend, all of
the sections above referred to. The amendment to the
three sections contained in the chapter relating to vacation
of judgments was, so far as this question is concerned, im-
material, as the limitation of time contained in the sections
amended was also contained in the amendatory sections.
There is, however, a provision in the same act which thus
amended the sections under discussion, contained in § 4
of said act, which is somewhat material to the considera-
tion of the questions to be hereafter discussed. Said § 4
is as follows:

" The provisions of this chapter shall not be so construed
as to affect the power of the court to vacate or modify
judgments or orders as elsewhere in this code provided;
nor shall any judgment of acquittal in a criminal action be
vacated under the provisions of this chapter."

From this provision it will be seen that the legislature

evidently had in mind the provisions of § 109 of said code above referred to, and intended to preserve to the court the right to relieve against a judgment as provided in said section, but, as the relief provided for under that section could only be extended during a period of five months after the adjournment of the term, if it had been left by the legislature as it stands in the code it would have been immaterial so far as the discussion of this question is concerned, but the same legislature (Laws 1891, p. 106) passed an act entitled "An act relating to pleadings in civil actions, and amending §§ 76, 77 and 109 of the Code of Washington of 1881," by the provisions of which act said § 109 was so amended that the limitation of five months therein contained was entirely omitted, and the limitation of time within which relief might be extended thereunder entirely removed. And if this section as amended was the law at the time the order complained of was entered in the court below, it is practically conceded by the petitioners that, excepting for one proposition which we shall hereafter discuss, the court had jurisdiction to enter the order in question, and the petition must be denied.

The proposition above referred to is this: The said act amending § 109 did not go into effect until some ten months after the rendition of the judgment in question, and it is contended by petitioners that inasmuch as under said § 109, as it stood at the time of the rendition of their judgment, the relief thereunder was confined to five months, at the expiration of that time their interest in said judgment became a vested one, so far as said § 109 is concerned, and that thereafter no amendment of said section could affect their rights. With this contention, however, I cannot agree. Their right in the judgment did not become vested until the court had lost all power to relieve against the same, whether under § 109 or any other provision of the code, and not being vested it was competent for the legis-

lature to extend or change the time within which it could be attacked in the court where rendered by any legislation which it thought proper to effect such result.

It is contended on the part of the petitioners that the act amending said section 109 is void for the reason that the subject of such act is not clearly expressed in the title, and that if the first clause of said title can be held to sufficiently state the object of the act so far as it related to pleadings, the change made in section 109 relating to the time in which the court might vacate a judgment was not within such title, as it had no relation to the question of pleading. I think, however, that as the provision as to vacating of judgments was a part of the original § 109, which was contained in the chapter relating to pleadings, and as the relief sought thereunder is always obtained by the filing of some pleading, or other paper in the nature of a pleading, it is sufficiently germane to the subject to stand as a part of an act relating to pleadings, and if the first part of said title sufficiently indicates the subject-matter to authorize legislation upon the subject of pleadings, the provisions enacted thereunder are valid and binding as a part of the laws of this state.

I am of the opinion that said act can be thus sustained, but assuming for the purpose of this discussion that the first portion of said title had been entirely omitted, and the act was simply entitled "An act to amend sections 76, 77 and 109 of the Code of Washington of 1881," a very important question is presented as to whether or not the sections in question, if enacted under such a title, would be valid and binding. This inquiry presents two important points for determination: (1) Is there such a thing known to the law of this state as the Code of 1881; and (2) If there is such code, can a section thereof be amended by an act under a title which simply provides for the amendment of such section by its number without any designation of the

subject-matter of the section to be amended? In my opinion the first proposition is too clear for extended argument. In fact, I do not understand the counsel for petitioners to have directly raised this question in the discussion here, but as it has been raised in discussions heretofore had in regard to the sufficiency of titles to acts referring thereto, I think it best that it should be here decided. The legislature which revised and reënacted the laws which now constitute such code provided that the laws thus revised and reënacted should be arranged and consecutively sectionized from first to last, and that such laws when so placed and numbered in a single body should constitute the code, and I can see no reason why their will thus expressed should not have force. Besides, from that time to this, the legislature by constant reference to said body of laws as the "Code of 1881," have clearly shown their adoption of the same as such code, and for the courts to hold that there was no such thing as the Code of 1881 would, in my opinion, do violence to every rule of judicial interpretation of legislative acts.

We now come to the consideration of the second question above suggested. It is contended on the part of the petitioners that this question has been decided adversely to the validity of such title by the supreme court of the Territory of Washington, and they cite the case of *Harland v. Territory*, 3 Wash. T. 131, as conclusive upon the question. Such contention, doubtless, is warranted by the decision in said cause, and if the same is accepted as the settled law of the state, titles of this kind are clearly insufficient. It is with great reluctance that this court proceeds to reëxamine a question which has been fairly presented and decided by the supreme court of the Territory of Washington, and were it not for some special circumstances surrounding the decision of the case in question, we should hesitate long be-

fore reëxamining the question there decided, and should probably conclude to follow the same without such reëxamination. But when we take into consideration the fact that the whole court as then constituted was equally divided upon the questions therein decided, and that the decision was only made possible by the fact that in that particular case one of the judges of the court was incapacitated from sitting; and the further fact that had exactly the same case arisen in certain other districts of the territory, a contrary conclusion would have been arrived at; this court would be hardly justified in blindly following and accepting as the law of this state the decision of half of said supreme court which constituted a majority of those sitting in that particular case. The reputation for learning and ability of the judges who rendered the majority opinions in said cause, however, is such that their decision is entitled to much weight, and were we not convinced that the court which decided that cause was much less favorably situated for a full investigation of the question in the light of the authorities than is this court we might rest upon the able argument of such opinions and save ourselves the labor of a reinvestigation, but in view of the fact that at that time very few books were accessible to the court, and that a large number of the cases cited in said opinion are said to have been so cited from digests thereof rather than from the cases themselves; while this court has the opportunity to fully examine all the cases therein cited, and many more upon the same subject, I think we cannot rightfully escape such reexamination. Beside, the decision in that case was based upon the limitations contained in the organic act of the territory, while our decision must now be based upon the constitution of the state. It is doubtless true that these provisions are substantially the same, yet the fact remains that the particular clause in our constitution as it stands therein has

never received judicial construction.   The provision in question, as contained in § 19, article 2 of our constitution, reads as follows:

"No bill shall embrace more than one subject, and that shall be expressed in the title."

How shall this provision be interpreted?   What shall the word "subject," as used therein, be held to mean? Courts are bound to give such an interpretation to this provision as will make it reasonable and at the same time give it full force.   There are two ways in which the words thus used can be interpreted.   One is to hold that the word "subject" is not capable of further reduction; the other is to hold that it means a single subject in a more enlarged sense, in which may be included a large number of subjects.   To hold that the constitution makers intended the first interpretation would be to convict them of an intention to so tie the hands of the legislature as to make legislation extremely difficult, if not impossible; while the other construction will substantially subserve the object which they had in view and at the same time leave the legislature free to legislate in a reasonable manner.   I am of the opinion that the legislature must be the judge of the scope which they will give to the word "subject," and that so long as the title embraces but one subject it is not inimical to such constitutional provision, even although the subject as thus used contains any number of sub-subjects. As I have suggested, any other rule would make legislation practically impossible.   I do not suppose it will be contended that a title would be void which provided that the enactment was to be upon the subject of pleading.   It will be admitted by almost every one that that was a single subject, yet if we construe the word in its more narrow sense it contains many subjects, and the title would be clearly bad, and the legislature would be driven to enact

separate laws upon the subject of complaints, answers, replies, etc., etc. If we hold "pleading" to be a sufficient identification and unification of the subject, it is because we say the legislature has seen fit to make that a single subject. Again, it would hardly be contended that it is not competent under the provision in question for the legislature to enact as a single law a code of civil procedure, and that an act entitled "An act to provide a code of civil procedure" would be invalid, yet under this subject innumerable subheads and subjects can easily be carved out. Such title is good because the legislature has seen fit to take a comprehensive subject which can properly cover all of such subjects. If the legislature can thus by a name sufficiently comprehensive embrace all the subjects properly relating to civil procedure, it must follow that by adopting a subject sufficiently general it can embrace in one act all the statute law of the state. In other words, the legislature may adopt just as comprehensive a title as it sees fit, and if such title when taken by itself relates to a unified subject or object, it is good, however much such unified subject is capable of division. I have come to this conclusion not only from the necessities of the case as they appear to me, but from such authorities as I have been able to find on that subject. Mr. Cooley, in his admirable work upon Constitutional Limitations, makes use of the following language:

"The generality of a title is no objecton to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it." Cooley's Const. Lim. p. 144.

Mr. Justice READ, in a carefully considered opinion,

quotes with approval the following language, in referring to the title of the act in question:

" Whether the description of the subject might not with propriety be more specific, it seems to me, is a question for the legislature, rather than the courts. The purpose of the sixteenth section was that neither the members of the legislator nor the public should be misled by the title, not that the latter should embody all the distinct provisions of the bill in detail." *Blood v. Mercelliott*, 53 Pa. St. 391.

Mr. Justice VALENTINE, in passing upon this question, used the following pertinent language:

"The 'subject' to be contained in a bill under § 16, art. 2 of the constitution, which provides that 'no bill shall contain more than one subject, which shall be clearly expressed in its title,' may be as broad and comprehensive as the legislature may choose to make it. It may include innumerable minor subjects, provided all these minor subjects are capable of being so combined as to form only one grand and comprehensive subject; and if the title to the bill, containing this grand and comprehensive subject, is also comprehensive enough to include all these minor subjects as one subject, the bill, and all parts thereof, will be valid." See *Division of Howard County*, 15 Kan. 194.

Quotations of this kind could be continued indefinitely. In fact, I have been unable to find a single case which has sought to interpret the word " subject," when used in the way it is in our constitution, in any other than this liberal way. If the legislature sought to enact the entire body of the statute law of the state as one enactment, and to entitle the same "An act to establish a code of laws for the state of Washington," such title would clearly come within the definitions above quoted, and I can see no reason why it should not be good. It is true that the legislature and the public are not informed at all as to the particular terms of the various provisions of law which are intended to be embraced under such title, but are thereby informed clearly and fully that the one subject or object of

the act to be enacted thereunder is the establishment of an entire code of statute law, and are as much advised of the details, in fact, though perhaps a little less in theory, as they are by a title to provide a code of civil procedure. If it is competent for the legislature to enact this entire body of laws under a single title, it must follow that an act to revise or reenact the same would, upon familiar principles, be likewise valid; and if the whole act can be revised or reenacted under one title, the same can be revised or reenacted in part by way of amendments, provided the parts to be amended are specified in the title. The one object to be accomplished is to change this single body of laws, and whether the changes are few or many, it is still one object, but if less is sought than to reenact or revise the whole code, the particular parts to be so revised or amended must be set out in the title, otherwise the subject or object would not be expressed. From reason, and from the necessities of the case, titles of the kind in question must be sustained.

I will now proceed to a brief investigation of such authorities as my time has permitted me to examine bearing upon this question, and in this regard I have been very much aided by the able opinion of Mr. Justice TURNER, in the case of Hailand v. Territory, supra. In fact from the well known ability of that distinguished judge it will be evident to the bar of this state that the strong cases tending to sustain the doctrine of said case have been cited and reviewed in that opinion. I have carefully examined every case cited in said opinion as sustaining the doctrine of that case, and will now proceed briefly to review each and all of them. The cases of People v. Hills, 35 N. Y. 449, and People v. Briggs, 50 N. Y. 553, and Tingue v. Village of Port Chester, 101 N. Y. 294, are the only ones cited by the learned judge as directly in point as sustaining the position taken by him in said case. As

I read these cases they do not at all decide the point in question. On the contrary, the conclusion is almost irresistible from the reading of the case of *People v. Hills, supra,* that had the title construed in that case been like the one now under consideration, it would have been held good. The title therein construed was as follows: "An act to amend chapter 389 of the Laws of 1851." In rendering the opinion of the court in speaking of such title the court substantially says, that therefrom it is evident only that said chapter was to be amended, not that it was to be reenacted or revised as a whole, and that as it embraces 293 sections, a title which in substance says that it proposes to amend one or more of such sections without designating which ones, was bad. The learned judge makes use of the following language:

"The subject-matter of the act is to increase the number of directors which the common council of the city of Rochester was entitled to elect to compose the board of directors in the Rochester & Genesee Valley Railroad Company. No human ingenuity would ever discover that subject from the title of the act. . . . If the framer of the act of March 24, 1865, had entitled it an act to amend § 290 of chapter 389 of the Laws of 1851, a reader, by referring to that section, might have obtained from its title some notion of what the subject-matter of the act related to."

In another place he makes use of the following language:

"The act under consideration does not indicate, from its title, what particular part or section of the act of 1851 is amended."

In the case of *People v. Briggs, supra,* the court refers to and approves of the case of *People v. Hills, supra,* and distinguishes this case from that, and while it makes use of some expressions which seem to warrant the citation made in the case of *Harland v. Territory, supra,* yet the whole case, carefully considered, seems to me to be upon the other

side. It held the title under consideration good though it was as indefinite as any title could well be under the circumstances. Several acts relating to the city of Rochester were in existence. The title construed by the court was, "An act to amend the several acts in relation to the city of Rochester." In my opinion such a title could only have been sustained by the application of a rule fully as liberal as those which I have invoked in the case at bar. Moreover, the judge deciding the cause makes use of this pertinent and expressive language:

"It is not requisite that the most expressive title should be adopted, nor should courts criticise too rigidly the details of a bill to find extraneous matter. Every presumption is in favor of the validity of legislative acts, and they are to be upheld unless there is a substantial departure from the organic law. Courts have no concern with the propriety or wisdom of legislation."

The only other case cited by Justice TURNER as being directly in point, that of *Tingue v. Village of Port Chester,* *supra,* simply refers to and confirms the two cases above quoted from, and establishes no new doctrine that we can discover. These are all New York cases, and consequently, in the interpretation thereof the language of the same court in the decision of other cases becomes material, and in every one that I have been able to examine bearing upon the question there are expressions which confirm my interpretation of the cases above cited. For instance, in the case of the *People v. Banks,* 67 N. Y. 568, Judge ALLEN, in rendering the opinion of the court, made use of the following language:

"It is not allowable, for the purpose of invalidating a law, to sit in judgment upon its title to determine with critical acumen whether it might not have been more explicit, and so drawn as more clearly and definitely to indicate the nature of the legislation covered by it. The legislature is not subject to judicial control in respect to

the form or mode in which the 'subject' of a bill shall be 'expressed.' If it is expressed, the constitution is satisfied."

The other cases cited in the opinion of the learned judge under consideration as tending to establish the doctrine thereof are wider of the mark than the ones already reviewed. In the case of *People v. Gadway*, 61 Mich. 285; 1 Am. St. Rep. 578, it is simply decided that "regulate" in a title was not broad enough to include "prohibit" in the body of the act. The case of *State v. Smith*, 35 Minn. 257 (28 N. W. Rep. 241), simply decides that under the circumstances of that case the repealing of a certain section could not be sustained under a title which provided only for the amendment of these laws. The case of *State v. Bowers*, 14 Ind. 195, is in my opinion clearly in point as sustaining the legislation in question. The court in that case sustained the title of the act, which was "To amend the first section of an act entitled 'An act concerning licenses to vend foreign merchandise, to exhibit any caravan, menagerie, circus, rope and wire dancing, puppet show and legerdemain, . . . and for the encouragement of agriculture, and concerning the licensing of stock and exchange brokers,'" but held that it was not comprehensive enough to embrace the term "concerts," and in so doing only applied a well established doctrine as to the construction of statutes. The next case referred to by the learned judge, that of *People v. Judge of the Superior Court of Grand Rapids*, 39 Mich. 195, could not have been examined, or it would never have been cited as sustaining the doctrine contended for. It is true there is something contained therein by way of lecture and advice to the legislature as to the desirability of more definite titles to their acts, but the particular title under consideration, which was more objectionable and uncertain than the one in the case at bar, was sustained by the court. The

other case cited in this connection is that of *Leonard v. January*, 56 Cal. 3, and is too unsatisfactory to be worthy of citation upon any point. The court in its opinion simply gives the title of the act under consideration, which was in substance "To amend certain sections of an act to establish a system of county governments, add certain sections thereto, and repeal certain sections thereof," and says that it is void as in conflict with the constitution of the state, without giving one word as to the reasons for such decision; and from the title it will be seen that it could have been held in violation of said constitutional provision as well, if not better, upon other grounds than the one in controversy here.

I shall not attempt to review all the cases. The number is very great. I have, however, been unable to find more than one or two cases which fully support the doctrine of *Harland v. Territory*, and even these could probably be explained upon other grounds than that the court had construed such a provision as the one in question so narrowly as to invalidate titles like the one at bar. A few cases bearing directly upon the question, and sustaining the validity of such titles, will be given. In the case of *Wheeler v. State*, 23 Ga. 9, the court held that any section of the penal laws of the said state could be amended under a title simply referring to said section of the penal code (by its number) without any addition thereto. In the case of *State v. Garrett*, 29 La. Ann. 637, the court holds a title good which only refers to certain sections of the Revised Statutes of 1870 by designating their numbers. In the case of *State v. Bankers', etc., Association*, 23 Kan. 499, it was held that an act to amend §§ 2, 4, 17, 41 and 59 of a former act, without further reference thereto, was good as to any amendment to such sections, but that it was not broad enough to cover in the same act an amendment to § 78 of the same law not at all referred to in the title. In addition to the

cases above mentioned I cite as bearing generally upon the proposition, and as tending more or less strongly to sustain the validity of titles like the one in question: *State Line & Juniata R. R. Co.'s Appeal*, 77 Pa. St. 429; *State v. Gut*, 13 Minn. 341; *Tuttle v. Strout*, 7 Minn. 465; 85 Am. Dec. 108; *Norman v. Curry*, 27 Ark. 441. This case last cited, upon a superficial examination, would seem to be against the proposition for which I am contending, but when carefully examined I think it sustains my views, and holds that the title may be as comprehensive as the legislature sees fit to make it, but that when they have selected a title, however restricted, only those things fairly contained thereunder can be properly embodied in the statute.

The title to the act in question is good under our constitution, and § 109 as it now stands authorizes a court at any time, for sufficient reason, to vacate a judgment. With this view of the law it does not appear from the petition that the court has proceeded without jurisdiction, and the writ prayed for must be denied.

ANDERS, C. J., and STILES, SCOTT, and DUNBAR, JJ., concur.