[No. 19136. Department One. April 15, 1925.]

*In the Matter of the Application of* FRED H. J. HAMMAR *for a Writ of Habeas Corpus.*[1]

HABEAS CORPUS (8-2)—GROUNDS FOR RELIEF—CONSTITUTIONALITY OF STATUTE. On habeas corpus to release one convicted of the violation of an act, the court cannot determine the constitutionality of the act, the remedy being by appeal; in view of Rem. Comp. Stat., § 1075, prohibiting inquiry as to the legality of any judgment of a court of competent jurisdiction whereby a party is held in custody.

Application filed in the supreme court January 9, 1925, for a writ of habeas corpus to release a person held in custody upon conviction of the crime of grand larceny. Denied.

*Henry Clay Agnew,* for plaintiff.

*The Attorney General* and *E. W. Anderson, Assistant,* for defendant.

[1]Reported in 234 Pac. 1018.

MAIN, J.—This is an original application in this court for a writ of habeas corpus by which the petitioner seeks his release from the state penitentiary. It is alleged in the petition that he was tried and convicted of grand larceny in the superior court for King county in August, 1921, and that, prior to judgment and sentence, he was, by a supplemental information, charged with being an habitual criminal, in that he had been four times previously convicted in British Columbia of crimes amounting to felonies under the laws of this state. Conviction was had upon the supplemental information and the petitioner was sentenced under the habitual criminal act.

Section 2286, Rem. Comp. Stat. [P. C. § 8721], among other things, provides that every person convicted in this state of certain crimes, whether committed "in this state or elsewhere," shall be adjudged an "habitual criminal." The contention is made that this act is unconstitutional in so far as it undertakes to give the same effect to convictions in a foreign country "as given here, without attempting to distinguish between convictions obtained in countries that are civilized from convictions obtained under the laws of barbarous and uncivilized foreign countries."

The constitutionality of the statute cannot be raised in this proceeding. That question was fully discussed and determined in *State ex rel. Jahn v. Searing,* 120 Wash. 117, 207 Pac. 5, and a liberal quotation from the opinion in that case is all that now needs to be said upon the question:

"We shall, therefore, assume that the only question before us is whether, in an application for a writ of habeas corpus, we will determine whether the ordinance under which the conviction was had is violative of the state or Federal constitutions.

"Section 1075, Rem. Comp. Stat., provides that:

" 'No court or judge shall inquire into the legality

of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:— 1. Upon any process issued on any final judgment of a court of competent jurisdiction; . . . 3. Upon a warrant issued from the superior court upon an indictment or information.'

"The question now before us was elaborately considered by this court, sitting *En Banc,* in *In re Newcomb,* 56 Wash. 395, 105 Pac. 1042. In that case, speaking through Chief Justice Rudkin, we said:

" 'After a full and exhaustive examination of the authorities, we are convinced that the judgment of the superior court of Pierce county is not void for any of the reasons assigned. That court had full and complete jurisdiction to determine every question here presented, and its determination is not and cannot be void. We are further of opinion that where a party is held in custody under process issued on the final judgment of a court of competent jurisdiction, or upon a warrant issued from the superior court upon an information or indictment, he is not entitled to his discharge on habeas corpus unless such process or judgment be void, and a judgment is not void simply because the court decided erroneously some question properly before it and within its acknowledged jurisdiction. . . . To say that an unconstitutional law or a repealed law is no law is both logical and sound, but to say that a judgment of a court of competent jurisdiction is no judgment, because some question of law properly before it was decided erroneously, is, in our opinion, a *non sequitur.'*

"At another place in the opinion we said:

" 'Many courts hold that habeas corpus will lie for the discharge of one held under an unconstitutional statute, or a statute that has been repealed. We think, indeed, a majority of the more recent cases so hold. Nevertheless, there are many well-considered cases holding the contrary, for reasons which to our minds are unanswerable.'

"In that case we quoted with approval from *Ex parte Fisher,* 6 Neb. 309, as follows:

" 'And we are not prepared to say that, upon a writ of *habeas corpus,* we can look beyond the judgment and re-examine the charges on which it was rendered, or to pronounce the judgment an absolute nullity on the ground that the constitutionality of the statute relative to the license law is controverted. If the validity of a statute is brought in question in an inferior court on the trial of a cause, that question must finally be determined in the same mode as other legal questions arising on the trial of causes in such court—that is, by proceedings in error or appeal, as may be most appropriate and allowable by law.'

"In *In re Putnam,* 58 Wash. 687, 109 Pac. 111, we said:

" 'It can make no difference that the petitioner contends that the statute under which the state purports to proceed is unconstitutional, or has no application to one in his situation. The superior court before which the information is pending has jurisdiction and power to determine these questions, and the defendant must raise them in the pending proceeding, and appeal from the judgment if it be adverse to him, before he can ask this court to review the legality of the proceedings or the validity of the statute.'

"These cases expressly decide the question we are discussing. There may be found in some of our earlier cases isolated expressions which at first glance may appear to be not in harmony with the doctrine of these cases, but upon close examination it will be found that they do not hold to a doctrine contrary to that laid down in the *Newcomb* and *Putnam* cases, *supra.*"

It follows that the application for the writ must be denied.

TOLMAN, C. J., PARKER, ASKREN, and BRIDGES, JJ., concur.