[No. 22630. Department One. October 15, 1930.]

*In the Matter of the Application of* JAMES HULET *for Writ of Habeas Corpus.*[1]

[1]Reported in 292 Pac. 430.

*J. A. Kavaney*, for relator.

*Austin M. Wade* and *A. P. Wilson*, for respondent.

*The Attorney General* and *John C. Hurspool, Assistant, amici curiae.*

BEALS, J.—James Hulet files in this court his petition for a writ of *habeas corpus* directed to the sheriff of Grays Harbor county, who, petitioner alleges, is unlawfully keeping him in restraint. An order to show cause having been issued, and respondent sheriff having made his return thereto, the matter is now before the court for determination.

It appears that petitioner, having been charged before a justice of the peace for Montesano precinct with the offense of manufacturing intoxicating liquor for the purpose of sale, pleaded guilty to the charge, and was, by the justice, sentenced to serve ninety days in the county jail and pay a fine of six hundred dollars. Petitioner was convicted of violation of chapter 122, Laws of 1921 (Laws of 1921, p. 398; Rem. Comp. Stat., § 7338), the pertinent portion of which reads as follows:

"AN ACT relating to intoxicating liquors, and amending sections 3193, 3194, Pierce's Code.

"Be it enacted by the Legislature of the State of Washington: . . .

"Every person convicted of the manufacture of intoxicating liquor for the purpose of sale, barter or exchange thereof shall be punished by a fine of not less than $500 nor more than $1,000, and by imprisonment in the county jail for not less than ninety days nor more than six months. Every person convicted a second time of the manufacture of intoxicating liquor for the purpose of sale, barter or exchange thereof shall be punished by a fine of not less than $1,000 nor more than $2,000, and by imprisonment in the county jail for not less than six months nor more than one year.

"The provisions and penalties of this section are independent of those of Sec. 3179h of Pierce's Washington Code relating to the offenses of 'jointist' and 'bootlegger' which shall remain in full force and effect.

"Every justice of the peace shall have jurisdiction to hear and determine any offense in this section prescribed and to impose any punishment in this section provided except in cases where previous conviction under this section is charged."

Petitioner contends that, under the statutes of this state, the jurisdiction of justices of the peace for precincts other than cities of the first class, under circumstances similar to those disclosed by the record herein, is limited to the imposition of a fine not exceeding $100, or a sentence of not to exceed thirty days in the county jail. Petitioner contends that, in so far as the sentence imposed upon him by the justice exceeds these limits, the same was unlawful, and that petitioner, after serving so much of the sentence as lies within what he contends is the jurisdiction of the justice, is entitled to his discharge. It is admitted that, at the time of the institution of this proceeding, petitioner had served so much of his sentence as, according to his contention, the justice could lawfully impose. If,

then, the sentence, as pronounced by the justice, was in excess of that which the law vested the justice with jurisdiction to pronounce, petitioner is entitled to his discharge, unless, as contended by respondent, the remedy by way of a writ of *habeas corpus* is not available to petitioner.

██ Petitioner entered a plea of guilty before the justice, and respondent contends that petitioner cannot test the constitutionality of the sections of the statute under which he was sentenced by applying for a writ of *habeas corpus,* but that these questions can be presented to this court only on appeal.

It is, of course, true that, as a general rule, a writ of *habeas corpus* may not be sought for the purpose of testing the constitutionality of a statute under which the person seeking the writ was convicted. *State ex rel. Jahn v. Searing,* 120 Wash. 117, 207 Pac. 5; *In re Voight,* 130 Wash. 140, 226 Pac. 482; *In re Hammar,* 134 Wash. 51, 234 Pac. 1018; *Thomas v. Phelan,* 157 Wash. 471, 289 Pac. 51. These cases declare the doctrine that the constitutionality of an act cannot be tested by *habeas corpus,* but must be presented to this court on appeal. As stated in the opinion *In re Voight, supra,* quoting from the opinion in the case of *Smith v. Hess,* 91 Ind. 424,

"A judgment by a court of competent jurisdiction, valid upon its face, and a valid commitment under it, is an unanswerable return to a writ of *habeas corpus.*"

The general rule above referred to does not, however, apply to the case at bar, which falls under the exception which was the basis of the decision of this court in the case of *State ex rel. Wagner v. Superior Court,* 144 Wash. 71, 256 Pac. 784. In that case, it appeared that one Wagner, having been convicted before a justice of the peace on the charge of unlawful possession of game, was found guilty and sentenced to

pay a fine in the sum of two hundred and fifty dollars. In default of paying this fine, Wagner was imprisoned in the county jail, whereupon he applied to the superior court for a writ of *habeas corpus.*

The trial court having sustained a demurrer to his petition and entered judgment dismissing the same, upon appeal, this court reversed the ruling of the trial court, and held that, upon the facts stated in Wagner's petition, it appeared that the fine imposed by the justice was beyond his jurisdiction, and that the justice had therefore attempted to impose a punishment beyond that which, under the law, he had authority to direct. It was held that the justice had no power to try the case against Mr. Wagner, because it could not impose the sentence required by law. While some of the language in the case cited is possibly inappropriate to the situation which was then before the court, the result reached was correct, and it was properly held that the petitioner was entitled to test the validity of the sentence imposed upon him, and his commitment pursuant thereto, by way of *habeas corpus.*

While the statute under which Mr. Wagner was sentenced mandatorily fixed a penalty entirely beyond that which, under the law, the justice had the power to impose, and in the case at bar a portion of the penalty provided by the statute falls within the ordinary jurisdiction of a justice of the peace, we deem this immaterial, in view of the sentence actually imposed by the justice upon the petitioner herein, and we hold that, under the circumstances disclosed by this record, petitioner may test the validity of the sentence, pursuant to which he is now confined, by way of an application for a writ of *habeas corpus.* It would seem that, in the prosecution of Mr. Wagner for violation of the game laws, the justice of the peace did, in fact, have power, as a committing magistrate, to hear the

case, but, because of the sentence provided for by law, had no authority to find the accused guilty, but had authority only to bind him over to the superior court for trial. It may be that, in the opinion of this court in the *Wagner* case, *supra,* the jurisdiction of the justice, as a committing magistrate, to hear the case, was confused with the assumed jurisdiction of the justice to try the case, find the accused guilty and impose sentence, which latter jurisdiction was clearly lacking.

So, in the case at bar, if petitioner's assertion that the statute under which he was tried and sentenced is unconstitutional should be held correct, the judgment entered by the justice against petitioner, and the sentence imposed thereunder, at least in so far as the same exceeds the statutory jurisdiction of the justice, would be wholly void and susceptible to attack by way of *habeas corpus.*

■ This brings us to the merits of the controversy, whether the justice had lawful authority to try petitioner and impose the sentence which was imposed, or any sentence, and whether or not the laws under which petitioner was charged, tried and sentenced are constitutional. The legislature, pursuant to article IV, § 10, of the state constitution, enacted Rem. Comp. Stat., § 46, defining the jurisdiction of justices of the peace, which section has never been repealed or directly amended, and reads as follows:

"Justices of the peace shall have jurisdiction concurrent with the superior courts of all misdemeanors and gross misdemeanors committed in or which may be tried in their respective counties: Provided, that justices of the peace in cities of the first class shall in no event impose greater punishment than a fine of five hundred dollars, or imprisonment in the county jail for six months; and justices of the peace other than those elected in cities of the first class shall in no event impose greater punishment than a fine of one hundred

dollars, or imprisonment in the county jail for thirty days.''

The title to chapter 2, Laws of 1915, p. 2 (Initiative Measure No. 3), reads as follows:

''AN ACT relating to intoxicating liquors, prohibiting the manufacture, keeping, sale and disposition thereof, except in certain cases, the soliciting and taking of orders therefor, the advertisement thereof and the making of false statements for the purpose of obtaining the same, declaring certain places to be nuisances and providing for their abatement, regulating the keeping, sale and disposition of intoxicating liquors by druggists and pharmacists, the prescription thereof by physicians, the transportation thereof, and providing for the search for and seizure and destruction thereof, prescribing the powers and duties of certain officers, and the forms of procedure and the rules of evidence in cases and proceedings hereunder, and fixing penalties for violations hereof, and the time when this act shall take effect.''

And under this act, justices of the peace had jurisdiction to hear and determine prosecutions instituted for violation of the act, and, upon conviction, to impose the statutory penalties.

The title to chapter 19, Laws of 1917, p. 46, reads as follows:

''AN ACT relating to intoxicating liquors and the importation, receipt, purchase, transportation, manufacture, possession, use, sale and disposition thereof, prescribing the powers and duties of certain officers in relation thereto, establishing rules of evidence in certain cases, amending sections 7, 8, 17, 23, 31 and 32, and repealing sections 15, 16, 18, 19, 20, 21, 22 and 29 of initiative measure No. 3, enacted by the people November 3, 1914, and further amending said act by adding thereto new sections to be known as sections 17a, 17b, 17c, 17d, 17e, 17f, 17g and 17h, and providing penalties for violations thereof.''

And by this act certain sections of the prior act

were repealed, other sections were amended and new sections were added.

Section 14 (P. C. § 3193) of chapter 19, Laws of 1917, p. 61, amending § 1, of initiative measure No. 3, reads as follows:

"Every person convicted of a violation of any provision of this act, for which the punishment is not specifically prescribed, shall be punished by a fine of not less than ninety-nine nor more than two hundred fifty dollars, or by imprisonment in the county jail for not less than thirty nor more than ninety days, or by both such fine and imprisonment and every justice of the peace before whom such conviction is had shall have jurisdiction to impose any punishment in this section prescribed."

Petitioner relies upon the case of *State ex rel. Wagner v. Superior Court,* 144 Wash. 71, 256 Pac. 784, hereinabove cited, which he contends is decisive of the question here presented. Mr. Wagner was charged with violation of the game code, and was prosecuted and convicted before a justice of the peace, the law providing for a fine of not less than two hundred fifty dollars, the justice imposing a fine in the minimum amount. This court held that the justice had, under the law, no jurisdiction to impose a fine of more than one hundred dollars, as provided for in Rem. Comp. Stat., § 46, *supra,* and that the petition filed by Mr. Wagner, seeking a writ of *habeas corpus,* stated a cause of action, and that the trial court had improperly sustained a demurrer thereto. This decision would, indeed, be directly in point were it not for § 14, chapter 19, Laws of 1917, p. 61, and chapter 122, Laws of 1921, p. 398, above quoted, which sections purport to vest justices of the peace with jurisdiction to impose punishments in excess of those provided for by Rem. Comp. Stat., § 46, *supra.* If the last mentioned statutes are valid, in so far as they purport to increase the

jurisdiction of justices of the peace, then it follows that the *Wagner* case is not controlling here.

In the case of *State v. Davis,* 43 Wash. 116, 86 Pac. 201, it was held that a justice of the peace had jurisdiction to hear and determine a charge involving a misdemeanor, punishable by a fine of from twenty-five dollars to two hundred dollars, and impose a fine up to one hundred dollars, the maximum jurisdiction of the justice. The original prohibition act, initiative measure No. 3 above referred to, carried a penalty for violation of any of the provisions of the act, where a punishment therefor was not specifically fixed, by way of a fine of not less than fifty dollars nor more than two hundred and fifty dollars, or imprisonment for not less than ten days nor more than three months, or by both such fine and imprisonment. Under the case of *State v. Davis, supra,* it is clear that justices of the peace had jurisdiction to hear and determine prosecutions for violations of the act falling within the foregoing classifications, providing that the sentence imposed by the justice did not exceed the maximum provided for by Rem. Comp. State., § 46, *supra.*

Chapter 19, Laws of 1917, p. 61, *supra,* is amendatory of initiative measure No. 3, and § 14 of the act of 1917, amending § 31 of initiative measure No. 3, purports to increase the jurisdiction of justices of the peace to include the imposition of any penalty provided for by § 14, the minimum penalties still remaining within the ordinary jurisdiction of justices of the peace. The same section was later amended by chapter 122, Laws of 1921, p. 398, *supra,* which last mentioned act also contained a provision to the effect that the punishments thereby provided for, with one exception, could be imposed by justices of the peace. In this last mentioned act, the reference in the title to § 3194, P. C., is apparently erroneous, but this mistake in the title is im-

material as far as questions here presented are concerned. By the third paragraph of this last mentioned act, a new offense was added, that of manufacture of intoxicating liquor for the purpose of sale, barter or exchange.

By chapter 122, Laws of 1921, p. 398 [Rem. Comp. Stat., § 7338], the legislature amended the laws relating to the possession or manufacture of, or traffic in, intoxicating liquor, the title of the amendatory and supplemental act, together with pertinent portions thereof, being hereinabove quoted. Petitioner argues that the title of the law passed in 1921 is defective in that the same does not conform to the requirements of article II, §§ 19, 37 and 38 of the state constitution, which read as follows:

"Sec. 19. BILL TO CONTAIN ONE SUBJECT.—No bill shall embrace more than one subject, and that shall be expressed in the title."

"Sec. 37. REVISION OR AMENDMENT.—No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

"Sec. 38. LIMITATION ON AMENDMENTS.—No amendment to any bill shall be allowed which shall change the scope and object of the bill."

It may be assumed that the foregoing provisions of the state constitution, in so far as questions here presented are concerned, are mandatory, and that, if the act under which petitioner was convicted and sentenced was passed in violation of any of the foregoing provisions, the act is void.

We shall first discuss §§ 37 and 38, of article II, of the state constitution, relied upon by petitioner in support of his contention that the law under which he was convicted is unconstitutional. Section 37 provides that:

"No act shall ever be revised or amended by mere

reference to its title, but the act revised or the section amended shall be set forth at full length.''

Petitioner contends that the acts of 1917 and 1921 do, as matter of fact, purport to amend Rem. Comp. Stat., § 46, *supra,* fixing the jurisdiction of justices of the peace, and fail to set forth in full the section amended, as provided for by § 37, *supra.* In the case of *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316, this court, speaking through Judge Rudkin, held that § 37, *supra,* did not apply to an act which is complete in itself, even though such act may in fact be, by implication, amendatory of an existing act. This rule has been followed in the later cases of *State ex rel. Hunt v. Tausick,* 64 Wash. 69, 116 Pac. 651, 35 L. R. A. (N. S.) 802; *State ex rel. Jones v. Clausen,* 78 Wash. 103, 138 Pac. 653; *Holzman v. Spokane,* 91 Wash. 418, 157 Pac. 1086; *Swanson v. School District No. 15,* 109 Wash. 652, 187 Pac. 386; and *Richland Irrigation District v. De Bow,* 149 Wash. 242, 270 Pac. 242. The early case of *Copland v. Pirie,* 26 Wash. 481, 67 Pac. 227, 90 Am. St. 769, was not followed by the later cases and is not now an authority upon this question.

By the acts of 1917 and 1921, the jurisdiction of justices of the peace was enlarged as to certain classes of cases. These acts are complete in themselves. They do not attempt to amend Rem. Comp. Stat., § 46, by referring to its title alone, or by any other reference thereto. The language of this court in the case of *Holzman v. Spokane, supra,* is peculiarly in point, and the authorities cited clearly indicate that petitioner's contention that the laws under which he was convicted violate article II, § 37, of the state constitution is not well taken.

Nor do these laws violate article II, § 38, which provides that ''no amendment to any bill shall be al-

lowed which shall change the scope and object of the bill.'' This section of the constitution manifestly refers to bills pending before the legislature and not to acts previously passed; article II, § 18, of the state constitution provides that ''no laws shall be enacted except by bill,'' the use of the word ''bill'' being evidently identical in the two sections. In the case of *State ex rel. Hunt v. Tausick, supra,* it was held that § 38, *supra,* had no application to an act which altered the scope of existing laws referring to second class cities, it appearing that, at the time the later law was passed, no bill pertaining to cities of the second class was pending before the legislature. The opinion of this court in the case of *State ex rel. Anderson v. Howell,* 106 Wash. 542, 181 Pac. 37, is to the same effect. We find nothing in the record which indicates that in the enactment of the laws hereinabove referred to any amendments were made which change the scope or object of the bills, or that § 38, article II, was in any way violated.

Petitioner also argues that the acts of 1917 and 1921 are unconstitutional because enacted in violation of article II, § 19, of the state constitution, which provides that ''no bill shall embrace more than one subject, and that shall be expressed in the title.'' It seems clear that the statutes in question are not obnoxious to the first portion of this section, and that it cannot be contended that they embrace more than one subject. The provision defining the jurisdiction of courts, in so far as the enforcement of a penal statute is concerned, is clearly properly embraced within the act. *Seattle & Lake Washington Waterway Co. v. Seattle Dock Co.,* 35 Wash. 503, 77 Pac. 845; *McQueen v. Kittitas County,* 115 Wash. 672, 198 Pac. 394; *Richland Irrigation District v. De Bow,* 149 Wash. 242, 270 Pac. 816.

The question, then, is, Are the titles of the acts sufficient? The title of initiative measure No. 3, and the titles of the two other acts hereinabove referred to, are set forth in full in the first portion of this opinion. The title of the act of 1917 is well-nigh as comprehensive as that of initiative measure No. 3. It indicates that the powers and duties of certain officers in relation to the act are prescribed, and that penalties for violations thereof are provided. Under the first clause falls the vesting of jurisdiction to try and sentence offenders against the act before justices of the peace, and under the second clause falls that portion of the act fixing penalties.

In the case of *State v. Scott*, 32 Wash. 279, 73 Pac. 365, the title of an act amending a section of the penal code relating to a certain crime was held sufficient, although the title gave no indication as to the changes made in the preexisting law, and the act was, in form, strictly amendatory. This court, speaking through Judge Fullerton, said:

"The constitutional requirement is only that the subject of the act be expressed in its title. This is the rule for all acts—those amendatory of existing laws as well as those so far complete in themselves as to be independent acts. . . . The title, . . . just as clearly expresses the subject of an act relating to that crime as any other form of words could possibly do; and, as it is the subject of the amendatory act that must be expressed in its title, we can see no reason why it is not a sufficient compliance with the constitution. But if the act in question is insufficient as an amendatory act, it is sufficient as an independent act. Clearly, the legislature may, under the title 'An act relating to the crime of rape,' constitutionally define what shall constitute the crime of rape, and provide a penalty for its violation. Such an act, though it might operate to change or supersede existing laws, would not be repugnant to any constitutional provision. And in this case, if the court could not treat the act as amendatory

of an existing statute because of the indefiniteness of the reference in its title to existing statutes, it would treat such reference as mere surplusage, and allow the act to stand as an independent act, as if enacted under the title above quoted.''

This opinion was followed in the later case of *State ex rel. Wolfe v. Parmenter,* 50 Wash. 164, 96 Pac. 1047, 19 L. R. A. (N. S.) 707.

Under the authorities last cited, the acts of 1917 and 1921 should be held valid, in so far as their respective titles are concerned, as being independent acts.

This court has several times upheld general titles of acts as preferable to longer and more specific titles. *Marston v. Humes,* 3 Wash. 267, 28 Pac. 520; *Holzman v. Spokane,* 91 Wash. 418, 157 Pac. 1086; *Archibald v. Northern Pacific R. Co.,* 108 Wash. 97, 183 Pac. 95; *Duke v. American Casualty Co.,* 130 Wash. 210, 226 Pac. 501; *National Association of Creditors v. Pendleton,* 158 Wash. 137, 290 Pac. 987.

This rule as to the titles to amendatory acts has been very generally followed by American courts, and short general titles have been almost without exception held sufficient. No one could, by any possibility, have been misled by the titles of the acts here in question, which clearly do not fall within the classification held objectionable by this court in the cases of *Anderson v. Whatcom County,* 15 Wash. 47, 45 Pac. 665, 33 L. R. A. 137; *Percival v. Cowychee Irrigation District,* 15 Wash. 480, 46 Pac. 1035; *State v. Clark,* 43 Wash. 664, 86 Pac. 1067; and *National Association of Creditors v. Brown,* 147 Wash. 1, 264 Pac. 1005.

After careful consideration of the constitutional questions argued by petitioner, we conclude that none of the laws under which petitioner was tried, convicted and sentenced are obnoxious to the objections urged by petitioner; that, consequently, none of petitioner's

112

constitutional rights were violated, and we find no cause for the issuance of the writ prayed for.

Writ denied.

MITCHELL, C. J., PARKER, TOLMAN, and MILLARD, JJ., concur.