[No. 16279.   Department One.   May 23, 1921.]

# James McQueen, *Respondent*, v. Kittitas County et al., *Appellants*.[1]

Constitutional Law (49)—Police Power—Licensing of Dogs—Reasonableness of Regulations. A statute providing for the licensing of dogs and payment of a fee therefor is a valid exercise of the police power, and does not violate Const., art. 7, §§ 1, 2, providing for equal and uniform taxation of property in proportion to its value.

Same (100)—Class Legislation—Grant of Special Privileges. A statute relating to the licensing of dogs but expressly making its terms inapplicable to "cities of the first or second class regulating the licensing of dogs by ordinance", does not contravene the provisions of Const., art. 1, § 12, prohibiting the granting by law to any citizen or class of citizens privileges and immunities which under the same circumstances shall not equally belong to all citizens.

Same (126)—Due Process—Deprivation of Property. The due process of law clause of the Federal constitution (Amendment, Art. XIV., § 1), and the special immunity and privilege clause of the state constitution (Art. 1, §§ 3, 12), are not contravened by a statute providing for the regulation and licensing of dogs.

Same (129)—Due Process—Taxation of Property. Laws 1919, p. 27, providing for the regulating and licensing of dogs is not in contravention of the due process of law and special immunity clauses of the state and Federal constitutions, for the reason that it requires the money collected to be kept separate and applied to the payment of damages caused by the depredations of dogs instead of applying the money collected to the general funds of the taxing power.

Same (28)—Distribution of Governmental Powers—Jurisdiction of Courts—Justices of the Peace. Section 4 of the act relating to dogs (Laws 1919, p. 27), providing that claims for damages for domestic animals killed or injured by dogs shall be presented by the owner to the nearest justice of the peace for investigation of facts and determination of the value or the damages, and a certificate filed by such justice with the county treasurer stating the amount of damages sustained, requires of the officer a ministerial rather than a judicial act, and is not violative of art. 4, §§ 1, 6, 10, of the state constitution.

[1]Reported in 198 Pac. 394.

STATUTES (14)—TITLES OF ACTS—UNRELATED SUBJECTS. Const., art. 2, § 19, providing that no act shall embrace more than one subject, which shall be expressed in the title, does not prohibit the enactment of a complete law on a given subject, even though the provisions of the law may be numerous and varied.

Appeal from a judgment of the superior court for Kittitas county, Davidson, J., entered October 27, 1920, upon findings in favor of plaintiff, in an action for damages. Affirmed.

*Arthur McGuire*, for appellants.

*E. K. Brown*, for respondent.

FULLERTON, J.—The legislature, at its biennial session of 1919, passed an act relating to dogs. Laws of 1919, page 27. By the first section of the act, it is made the duty of the county assessor of each county, at the time of listing personal property for taxation, to list all dogs owned or kept within his county, giving the name of the owner or keeper, together with the breed, size, color and sex of each dog, and to assess a license tax of one dollar upon each male dog and spayed female, and two and one-half dollars on each female dog, and to make return of such lists and assessments to the county treasurer, the assessments to be collected as other taxes are collected. To the section were annexed the following provisos:

"*Provided,* That in cities of the first, second and third class the license tax collected on dogs shall be credited to the funds as provided by ordinance of such city, and no other tax shall be levied or collected on dogs in such cities: *Provided,* that said cities may authorize their humane societies to expend such license tax in defraying the expenses of any carrying out the purposes of such societies. All fees and fines collected as aforesaid over and above the amount of expenses required to be met by such society shall be turned over

22—115 WASH.

by it to the city from whence such fines or fees were obtained.''

By section two of the act, there is created in the county treasury of each county a special fund to be known as the ''Domestic Animal Protection Fund,'' into which are to be paid all taxes collected under the provisions of the act. This section contains a proviso to the effect that, if at the end of any fiscal year the amount to the credit of the fund named exceeds two hundred dollars, the board of county commissioners may transfer the excess amount into a wild animal bounty fund, to be used in payment of bounties on wild animals pursuant to other provisions of the statute. Section three fixes the time when the assessments are due and payable, and provides for the destruction of all dogs on which the taxes are not paid. The next two succeeding sections read as follows:

''Sec. 4. Whenever any dog shall kill or injure any sheep, swine or other domestic animal, the owner of such animal may present a claim for damages to the nearest justice of the peace and such justice shall investigate the facts and determine the value of such animal killed or the damages to such animal injured, and shall issue and file with the county treasurer a certificate stating the amount of damages sustained and shall be paid for making such investigation and filing such certificate out of the domestic animal protection fund a fee of three dollars ($3.00).

''Sec. 5. The owner or keeper of any dog shall be liable to the owner of any animal killed or injured by such dog for the amount of damages sustained and costs of collection, and in case the owner or keeper of such dog is unknown or the damages cannot be collected, the person suffering damages may file a claim for the damages sustained with the county treasurer, and upon making proof to the satisfaction of the county treasurer by affidavit or otherwise, that the owner of the dog occasioning the damage is unknown or that the

damages cannot be collected from such owner, the treasurer shall pay to the claimant out of the domestic animal protection fund the amount of damages sustained as certified by the justice of the peace. Any person who shall keep any dog or allow the same to be and remain upon his premises for a period of fifteen days shall be deemed the owner of such dog for the purposes of this section."

Section six makes it lawful for any person to kill a dog found chasing, biting or injuring or killing domestic animals out of the enclosure of the owner, or biting any child, or person, and provides that the owner of any dog which is found chasing, injuring or biting any domestic animal or biting or injuring any child or person, shall thereafter keep the dog in an enclosure or under leash. Section seven makes it the duty of any person owning or keeping a dog found killing any domestic animal to kill the dog within forty-eight hours after being notified of the fact, and makes such owner or keeper guilty of a misdemeanor and punishable by fine if he fails so to do. Section eight provides:

"This act shall not apply to cities of the first or second class regulating the licensing of dogs by ordinance."

On the night and early morning of February 1, and 2, of 1920, in Kittitas county, two vicious dogs belonging to one F. C. Smith, then a resident of Ellensburg, in that county, attacked a band of blooded ewe sheep belonging to the respondent McQueen, killing certain of them and severely injuring certain others. McQueen proceeded under the statute to have his damages ascertained, and it was found by the justice of the peace to whom he made complaint that he had been damaged by the ravages of the dogs, "in the full and just sum of $1,215.00." He then filed a claim for the damages sustained with the county treasurer of Kitti-

tas county, accompanying the claim with a showing to the satisfaction of the treasurer that the owner of the dogs was financially irresponsible, that the damages suffered could not be collected from him, and demanded payment from the fund named. Payment was refused, and he instituted this proceeding to compel payment. On the trial in the court below he recovered, and the county and county officers named as defendants appeal.

The sole question presented to this court is the constitutionality of the cited act. The appellants contend that the act is unconstitutional for the reasons (we quote from their brief):

"(a) Because it imposes a specific tax on dogs in contravention of Secs. 1 and 2, Art., 7, of the state constitution.

"(b) Because it grants special rights to owners of domestic animals in contravention of Sec. 12, Art. 1, of the state constitution.

"(c) Because it takes the property of one class of citizens without due process of law and grants immunities to one class of citizens and is unequal in its application on all classes of citizens, in contravention of Sec. 1, Art. XIV, of the constitution of the United States and Secs. 3 and 12, Art. 1, of the state constitution.

"(d) Because it grants jurisdiction to the justice of peace in contravention of Secs. 1, 6 and 10, Art. 4, of the state constitution.

"(e) Because the act embraces many subjects and they are not expressed in the title in contravention of Sec. 19, Art. 2, of the state constitution."

The sections of the constitution cited in the first of the reasons stated relate to the taxation of property. In so far as they are material to the contentions made, they provide that all property in the state, not exempt under the laws of the United States or under the state constitution, shall be taxed in proportion to its value, and that the legislature shall provide by law a uniform and

equal rate of assessment and taxation on all property according to its value in money. The argument is, that since dogs in this state are expressly declared by statute to be personal property, they must be taxed under these provisions of the constitution according to their value in money, as other personal property is taxed, hence any statute or ordinance which taxes them in arbitrary sums regardless of value is invalid. It is true that the legislature for the purposes of the criminal statutes has declared dogs to be personal property (Rem. Code, § 2302, subd. 11), but notwithstanding this, dogs do not stand on the same plane with horses, cattle, sheep and other domesticated animals. There is in them at best but a qualified property, and the declaration of one legislature that they are personal property will not prevent a subsequent legislature from enacting statutes with reference to them inconsistent with the declaration. It is the last act of the legislature which authoritatively speaks, and all prior acts inconsistent therewith, whether expressly repealed or not, must give way thereto. On the general question, it is the almost universal current of authority that dogs are a subject of the police power of the state, and their keeping subject to any form of license and regulation, even to absolute prohibition. Within these principles it cannot be said that the license tax imposed by the present statute is inimical to any limitation of the taxing power prescribed by the constitution.

The section of the constitution cited, in the second of the reasons given, prohibits granting by law to any citizen, class of citizens or corporation other than municipal, privileges and immunities which under the same circumstances shall not equally belong to all citizens and corporations. It is claimed that this provision of the constitution is violated by the act because dogs in

cities of the first and second class which regulate the licensing of dogs by ordinance are exempted from the provisions. But since dogs are a subject of the police power, we see no reason why the legislature may not make distinctions between breeds, sizes and the localities in which they are kept. The object of the statute is protection. The purpose is to prevent injuries to persons and property by dogs. Any distinction, founded upon reason at least, is therefore valid, and we see no reason why the legislature could not say that dogs regulated by license in cities of the first and second class are less liable to do injury than unregulated ownership in other localities.

The third contention, that an act such as the one here in question violates the due process of law clause of the Federal constitution, was met and answered in the negative by the supreme court of the United States in *Sentell v. New Orleans etc. R. Co.,* 166 U. S. 698. The plaintiff there sued to recover the value of a dog run over and killed by a car of the railway company. The defense was that the owner had not complied with the state laws or city ordinances with respect to the keeping of dogs. In the lower court the plaintiff recovered. The judgment was reversed by the appellate court of the state, from whence it was taken to the supreme court of the United States on the question whether the statute or ordinances violated the fourteenth amendment to the Federal constitution. Mr. Justice Brown delivered the opinion of the court, and from his very interesting discussion we excerpt the following:

"By the common law, as well as by the law of most, if not all, the states, dogs are so far recognized as property that an action will lie for their conversion . . . Although, in the absence of a statute, they are not regarded as the subjects of larceny. . . . The very fact that they are without the protection of the crim-

inal laws shows that property in dogs is of an imperfect or qualified nature, and that they stand, as it were, between animals *ferae naturae* in which, until killed or subdued there is no property, and domestic animals in which the right of property is perfect and complete.
. . .

"Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens. That a state, in the *bona fide* exercise of its police power may interfere with private property, and even order its destruction is as well settled as any legislative power can be, which has for its objects the welfare and comfort of the citizen. . . . It is true that under the Fourteenth Amendment no state can deprive a person of his life, liberty or property without due process of law; but in determining what is due process of law we are bound to consider the nature of the property, the necessity for its sacrifice, and the extent to which it has heretofore been regarded as within the police power. So far as property is inoffensive or harmless, it can only be condemned or destroyed by legal proceedings, with due notice to the owner; but so far as it is dangerous to the safety or health of the community, due process of law may authorize its summary destruction. . . . Although dogs are ordinarily harmless, they preserve some of their hereditary wolfish instincts, which occasionally break forth in the destruction of sheep and other helpless animals. Others, too small to attack these animals, are simply vicious, noisy and pestilent. As their depredations are often committed at night, it is usually impossible to identify the dog or to fix the liability upon the owner, who, moreover, is likely to be pecuniarily irresponsible. In short, the damages are usually such as are beyond the reach of judicial process, and legislation of a drastic nature is necessary to protect persons and property from destruction and annoyance. Such legislation is clearly within the police power of the state. It ordinarily takes the form of a license tax, and the identi-

fication of the dog by a collar and tag, upon which the name of the owner is sometimes required to be engraved, but other remedies are not uncommon.

"In Louisiana there is only a conditional property in dogs. If they are given in by the owner to the assessor, and placed upon the assessment rolls, they are entitled to the same legal guaranties as other personal property, though in actions for their death or injury the owner is limited in the amount of his recovery to the value fixed by himself in the last assessment. It is only under these restrictions that dogs are recognized as property. In addition to this, dogs are required by the municipal ordinance of New Orleans to be provided with a tag, obtained from the treasurer, for which the owner pays a license tax of two dollars. While these regulations are more than ordinarily stringent, and might be declared to be unconstitutional, if applied to domestic animals generally, there is nothing in them of which the owner of a dog has any legal right to complain. It is purely within the discretion of the legislature to say how far dogs shall be recognized as property, and under what restrictions they shall be permitted to roam the streets. The statute really puts a premium upon valuable dogs, by giving them a recognized position, and by permitting the owner to put his own estimate upon them.

"There is nothing in this law that is not within the police power, or of which the plaintiff has a right to complain, and the judgment of the Court of Appeals, is, therefore, affirmed."

See, also, cases collected in 8 A. L. R. 74.

It is further argued, in connection with the clauses of the constitution cited, that the act is invalid because the money collected as taxes is not applied to the general funds of the taxing power, but is kept separate and applied to the payment of damages caused by the depredations of dogs, and other purposes not strictly public. But statutes of this sort have been sustained by the courts with substantial uniformity. See *McGlone v. Womack*, 129 Ky. 274, 111 S. W. 688, 17 L. R.

A. (N. S.) 855; *Randall v. Patch*, 118 Me. 303, 108 Atl. 97, 8 A. L. R. 65.

The principle also received the sanction of this court in the case of *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, 2 N. C. C. A. 823, 3 N. C. C. A. 599. In that case the constitutionality of the workmen's compensation act was involved. The act provided for the collection of a fund from the operators of certain businesses, denominated by the act as extra hazardous, and provided that the fund should be used in compensating workmen engaged in the business for injuries suffered while so engaged. It was held that the act did not for that reason violate any of the provisions of the constitution above cited.

The fourth objection is that the statute grants jurisdiction to justices of the peace in contravention of art. 4, §§ 1, 6 and 10, of the state constitution. The argument in support of the contention assumes that the provision of the statute, authorizing complaints of losses to be made to a justice of the peace and authorizing that officer to ascertain and certify to the amount of damages suffered, vests in the officer judicial powers, forbidden by these sections. We think the contention unfounded. The act required of the officer is ministerial rather than judicial, and is one that might have been legally conferred on any other person or body of persons. The duty imposed is one which in no way pertains to the office of justice of the peace. It is a power conferred on the individual holding the office, not as a part of the duties of the office, but as something separate and apart therefrom. This we are clear was within the power of the legislature.

Finally, it is contended that the act embraces more than one subject, and is thus in violation of art. 2, § 19, of the constitution which provides:

"No act shall embrace more than one subject, and that shall be expressed in the title."

But this provision of the constitution was intended to prevent the legislature from embracing in one act wholly unrelated subjects; it was not intended to prevent the enactment of a complete law on a given subject, even though the provisions of the law may be numerous and varied. The question then always is, does the act contain unrelated matters. Tested by the rule, we are unable to see that this act contains any provision not proper to be included in its subject as expressed by its title.

The judgment is affirmed.

PARKER, C. J., HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.