[No. 31458. *En Banc.* January 5, 1951.]

CASCO COMPANY *et al., Appellants,* v. PUBLIC UTILITY DISTRICT NO. 1 OF THURSTON COUNTY *et al., Respondents.*[1]

[1]Reported in 226 P. (2d) 235.

*O'Leary, Meyer & O'Leary* and *Metzger, Blair, Gardner & Boldt,* for appellants.

*John S. Lynch, Jr., Weter, Roberts & Shefelman,* and *Holman, Mickelwait, Marion, Prince & Black,* for respondents.

*The Attorney General,* appearing personally for the constitutionality of the legislative act.

*J. W. Bryan, Ralph E. Purvis, Kern & Dano, Clarence J. Coleman, Warren J. Gilbert, Harold Lant,* and *Harvey F. Davis, amici curiae.*

ROBINSON, J.—This is an appeal from a declaratory judgment and decree entered in an action brought by three Washington corporations and one individual, all of whom are alleged in their complaint to be substantial taxpayers in Thurston county and consumers receiving electric service from Puget Sound Power & Light Company (hereinafter, for convenience, sometimes called "Puget").

The action was brought against public utility district No. 1 of Thurston county and its three commissioners. Plaintiffs alleged that general ad valorem taxes have been hitherto levied and collected for and in behalf of the defendant public utility district, and certain of such tax moneys are held by the defendants. They further alleged that the defendant district had obligated itself and intends to pay a portion of the expenses connected with a contemplated joint acquisition of the property and system

of Puget by the defendant district, and other public utility districts, and that the expenditures of such funds for such purposes would be illegal, and that plaintiffs, and all others similarly situated, would be irreparably damaged if the contemplated purchase of the properties of Puget is consummated.

Plaintiffs further alleged, on information and belief, that the defendant public utility district, purporting to act under authority granted by § 2 of chapter 227 of the 1949 Session Laws of the state of Washington, has entered into a contract with several other public utility districts of the other counties of the state where portions of the electric utility system of Puget are situated, and with one Guy C. Meyers, which contract, among other things, authorized Guy C. Meyers, as fiscal agent for each of such public utility districts, to make an offer on behalf of the public utility districts to jointly purchase the electric utility properties and system of Puget at a total purchase price sufficient in amount to enable Puget to pay to its common shareholders the sum of eighteen dollars a share as a liquidating dividend upon final dissolution. In this connection, it is further alleged that the commissioners of the defendant public utility district estimate that its share of the cost of such joint acquisition will amount to twelve million dollars. Plaintiffs further alleged that chapter 227 of the 1949 Laws of the state of Washington is unconstitutional, for the following three reasons:

"(a) Said act embraces more than one subject, contrary to the provision of Article II, Section 19 of the Constitution of the State of Washington, which provides:

" 'Bill to Contain One Subject—No bill shall embrace more than one subject, and that shall be expressed in the title.'

"(b) Section 2 of Chapter 227 of the 1949 Session Laws of the State of Washington is an amendment and revision of Section 6 of Chapter 1 of the 1931 Session Laws of the State of Washington as amended (R.R.S. 11611), but does not set forth at length said Section 6 of Chapter 1 of the 1931 Session Laws of the State of Washington, as amended, contrary to the provisions of Article II, Section 37 of the Washington Constitution, which provides:

" 'Revision or Amendment—No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length.'

"(c) That in the enactment of Chapter 227 of the 1949 Session Laws of the State of Washington, House Bill No. 561, which comprised what is now Section 1 of said Chapter 227, was amended and by amendments Sections 2 to 16, inclusive, of said Chapter 227 were added thereto and the scope and objects of said House Bill 561 was thereby materially and substantially changed, contrary to Article II, Section 38 of the Washington Constitution, which provides:

" 'Limitation on Amendments—No amendment to any bill shall be allowed which shall change the scope and object of the bill.' "

As will later be developed in this opinion, we are, in this appeal, concerned only with reason (a).

Plaintiffs further alleged, on information and belief, that unless restrained or enjoined, the defendants would carry out and execute the alleged joint contract.

In their answer, the defendants admitted many of the allegations of the complaint, including the allegations to the effect that the defendant public utility district intended to join with other public utility districts in purchasing the properties and system of Puget, as it alleged in the complaint, but specifically denied the allegations that they had no legal right or power to join in such purchase, and prayed the court: (1) to enter a declaratory judgment declaring, adjudging, and decreeing chapter 227 of the 1949 Laws of Washington to be valid and constitutional; and (2) to dismiss plaintiffs' action.

In November, 1949, the Honorable Charles T. Wright, one of the judges of the superior court of Thurston county, entered an order permitting the Puget Sound Power & Light Company to intervene and plead in the case. Shortly thereafter, Puget filed an answer to the amended complaint. In its answer, it admitted a number of the allegations of the complaint, but explicitly denied that the joint contract of the public utility districts to purchase its properties and system would be illegal or *ultra vires,* and

further denied that chapter 227 of the 1949 Laws of Washington is unconstitutional, for the reasons set forth in the complaint, or any other reason, and denied that the public utility district of Thurston county is without legal power or authority to join in acquiring its properties and system. It also prayed that the plaintiffs' action be dismissed, and that the court enter judgment decreeing chapter 227 of the 1949 Laws of Washington to be valid and constitutional, and that the defendant public utility district No. 1 of Thurston county has lawful power and authority to join with other public utility districts in acquiring its electric utility system and properties.

On December 7, 1949, the Honorable Smith Troy, attorney general of the state of Washington, gave notice to the attorneys representing the plaintiffs, defendants, and the intervener, that he was appearing for the state, as authorized to do by the Laws of 1935, chapter 113, § 11, p. 307 (Rem. Rev. Stat. (Sup.), § 784-11 [P.P.C. § 65-21]), providing that, when declaratory relief is sought and a statute is alleged to be unconstitutional, the attorney general shall be entitled to be heard. With leave of the court, ten other attorneys were recognized at the trial in the superior court as *amici curiae*. The extent of their actual participation in the trial, if any, is not shown by the statement of facts.

On February 7, 1950, the trial judge entered his findings of fact and conclusions of law. The findings of fact are very comprehensive. It does not seem expedient or necessary to quote them here. They establish a sound foundation for his conclusions of law which were as follows:

"I. Chapter 227 of the 1949 Session Laws of the State of Washington is valid and constitutional and the defendants and intervener are entitled to a Declaratory Judgment herein so declaring, adjudging and decreeing.

"II. The Amended Complaint of the plaintiffs herein should be dismissed with costs in favor of the defendants and intervener and no relief should be granted plaintiffs in this action."

We now quote, omitting the introductory portion, the substance of the declaratory judgment from which this appeal is taken:

"It is hereby DECLARED, ORDERED, ADJUDGED AND DECREED as follows:

"1. Chapter 227 of the 1949 Session Laws of the State of Washington is valid and constitutional.

"2. The Amended Complaint of the plaintiffs herein shall be and hereby is dismissed with costs in favor of defendants and intervener, the plaintiff taking nothing herein.

"DONE IN OPEN COURT, this 7 day of February, 1950.

"John M. Wilson, Judge."

The most important allegation in plaintiffs' complaint read as follows:

"Plaintiffs further allege that chapter 227 of the 1949 Session Laws of the state of Washington is unconstitutional and invalid because . . . "

This allegation was followed by three paragraphs, labeled (a), (b), and (c), which we have hereinbefore quoted. Paragraph (a) set up the contention that the act included more than one subject, contrary to the provision of Art. 2, § 19, of the state constitution:

"No bill shall embrace more than one subject, and that shall be expressed in the title."

Paragraph (b) set up the contention that § 2 of chapter 227 of the 1949 Session Laws is an amendment of § 6 of chapter 1 of the 1931 Session Laws, but does not set forth at length § 6 of chapter 1, as amended, contrary to the provisions of Art. 2, § 37, of the Washington constitution, which provides:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

Paragraph (c) set up the contention that the enactment of chapter 227 of the 1949 Session Laws violated Art. 2, § 38, of the state constitution, which provides:

"No amendment to any bill shall be allowed which shall change the scope and object of the bill."

After hereinbefore completely quoting paragraphs (a), (b), and (c), we said that we would later point out that, in this appeal, we are concerned only with reason (a). We will now do so.

At the time this appeal was taken, subdivision (b) of Rule of Supreme Court 16 (2), 18 Wn. (2d) 17-a, required an appellant to include, in his brief, a statement of the questions involved in the appeal, and, in the same rule, it is provided that the respondent or respondents may include, in their brief, a counter-statement of questions involved, including a restatement or additional statement. In complying with subsection (b) of Rule 16 (2), the appellants, in their brief, under the heading, "Statement of Questions Involved," said:

"1. Is Chapter 227 of the Laws of 1949 unconstitutional and void because it violates Article II, Section 19, of the Constitution of the State of Washington, which provides:
" 'No bill shall embrace more than one subject, and that shall be expressed in the title.'
"The Trial Court answered No."

We must, of course, conclude, from the above statement of the questions involved in this appeal, that the appellants have abandoned their contentions that chapter 227 of the 1949 Session Laws is unconstitutional, on the ground that it violates § 37 of Art. 2 of the state constitution, and also on the ground that it violates § 38 of Art. 2 of the state constitution.

Furthermore, the respondents, in their brief, did not, as they were privileged to do by Rule 16 of the rules of this court (18 Wn. (2d) 17-a), state that any question was involved in the appeal concerning noncompliance with §§ 37 and 38 of Art. 2 of the state constitution. On the other hand, they concurred with the appellants that the only question presented on this appeal is whether chapter 227 of the Laws of 1949 is unconstitutional, on the claimed ground that it violated § 19 of Art. 2. We now quote from their brief:

"STATEMENT OF QUESTION INVOLVED. We concur in appellants' statement that the single question presented is whether Chapter 227 of the Laws of 1949 is unconstitutional

on the claimed ground that it violates Article II, Section 19 of the Washington Constitution which is as follows:

" 'No bill shall embrace more than one subject, and that shall be expressed in the title.'

"The trial court answered in the negative."

We have been furnished with a plethora of briefs to assist us in answering that single question. Counsel for the parties to the action have filed one hundred forty-five pages of briefs. In addition to those briefs, we have a very useful brief prepared by Attorney General Troy and Mr. Lyle Iversen, one of his assistants, the attorney general having appeared in the case as authorized to do by a section of our declaratory judgment act (Laws of 1935, chapter 113, § 11, p. 307; Rem. Rev. Stat. (Sup.), § 784-11); nor is that all. A one-hundred-twelve-page *amicus curiae* brief was filed by W. J. Bryan, a very active member of the bar of Washington for many years. To that brief, respondents filed an answering brief, to which Mr. Bryan filed a nineteen-page reply. To this array of briefs, seven of the eleven attorneys who appeared as *amici curiae* at the trial added a short brief.

Naturally, there is a great diversity of opinion among the briefs, and a reading of the whole of them at one sitting tends to somewhat confuse the reader. The appellants, of course, argue for a reversal of the judgment, and the respondents urge that it be affirmed. The attorney general's brief tends to support the respondents' position. As between the parties to the action, Mr. Bryan tends to favor the appellants' position, but he insists that the case is collusive, and, in his capacity as a friend of this court, moves the court to remand the case to the lower court for dismissal; and, urging that disposition of the cause, he attaches, as an appendix to his brief, what purports to be a copy of the contract which the plaintiffs in the action allege that the defendants had entered into. This so-called appendix consists of many pages of very small type.

Of course, this court cannot consider the appendix as evidence. This court is a reviewing court, and, on appeal, considers only such evidence as was admitted in the trial

court. On appeal of the case to this court, it would be very unfair to the trial judge to consider evidence in this court which was not before him when he entered his decision in the case. Furthermore, the purported contract, as printed in the appendix to Mr. Bryan's brief, has no authentication unless the following statement on page sixteen of his reply brief can be so considered:

"Of course the Appendix attached to my brief, which is a photostatic copy of an official record, which I was able to get hold of, is not a part of the record in this suit — this suit has no record of evidence, either documentary or oral."

■ That is at least not altogether accurate. During the course of the trial, as the statement of facts shows, the appellants made an attempt to bolster their allegations as to the unconstitutionality of chapter 227 of the Laws of 1949 by offering in evidence excerpts from the journal of the House of Representatives which they asserted tended to prove that section 2 of chapter 227 was an unconstitutional amendment. Defendants' counsel objected and called the attention of the court to the fact that this court has many times ruled that the trial court cannot consider legislative journals offered in an attempt to impeach an enrolled bill, but only the enrolled bill itself; whereupon a certified copy of the enrolled bill was offered in evidence and admitted, and made part of the record. So contrary to Mr. Bryan's assertion, there is some documentary evidence in the record, that is, the enrolled bill, the constitutionality of which is attacked in this action, and that exhibit is a very important piece of evidence in this case, since the trial court ruled it must be given full faith and credit, and could not be impeached by the legislative journals. Some criticism is made of that ruling, but it was sound and correct.

4 Wigmore on Evidence (3d ed.) 683, § 1350, deals with the question: "Enrolled Copy of A Legislative Act; may the Journals override it?" After a long discussion of the question, the author holds, as the trial judge did in this case, that legislative journals cannot be used to contradict or overrule an enrolled legislative act, and he further shows, in a footnote on page 699 of volume 4, that an opinion of

this court, handed down as early as 1891, rendered superfluous all other deliverances on the subject. We quote the footnote in full:

"6. The opinions by Hoyt, J., in *State v. Jones*, 6 Wash. 452, 34 Pac. 201, and Beasley, C. J., in *Pangborn v. Young*, 32 N. J. L. 29, are easily the best on the subject both for comprehensiveness and keenness of analysis and for clearness of exposition. The latter opinion is the one best known; but the former, though rarely cited, would alone render superfluous all the other deliverances on the subject. It is not quoted here, because it does not lend itself to partial quotation; but it ought to be read in its entirety by every one desiring to make an argument on the subject."

Since Professor Wigmore is, in legal circles, universally acknowledged to be one of the soundest and ablest of American legal writers, that footnote may justly be regarded as a veritable accolade to the Honorable John P. Hoyt who prepared the opinion for the court in *State v. Jones*, and the four other judges of the court who concurred in it.

In his brief, Mr. Bryan, as *amicus curiae*, moves this court, unless it will hold that chapter 227, Laws of 1949, is illegal, void, and unconstitutional, and enjoin the defendant public utility district and its commissioners, and other public utility districts, from carrying out the contract between them to jointly purchase the properties of Puget, to dismiss this appeal and remand the case to the trial court for further trial.

In support of his motion to dismiss this appeal, Mr. Bryan includes a purported statement from Anderson on Declaratory Judgments, although he does not indicate the page on which the statement appears. The quotation reads, in part, as follows:

" 'On the ground that it is collusive, fictitious, or merely involves a moot question an attorney, as an Amicus Curiae, may move to and the court will dismiss an action even though it is pending on appeal.' U. S. Robinson v. Lee, 196, U. S. 65, 49 Law Ed. 388."

In making that quotation, Mr. Bryan must have depended upon the following language in the opinion, because there is no other in it which is any way apposite:

"Counsel other than those representing the parties was permitted to file a brief as *amicus curiae*, and urged that this was a collusive suit. But the Circuit Court held that it was not, 122 Fed. Rep. 1010, and we accept the finding for the purposes of disposing of the case."

On many pages of his brief, Mr. Bryan refers to this case as a collusive action, and we are urged to so hold and order the appeal dismissed. We find nothing in the record which would induce us to cast such an aspersion upon the parties to the action or upon the attorneys who represented them or upon the trial judge who, by reason of his long term of service as a judge of the superior court of Thurston county, as well as long previous service in several state departments, was probably acquainted with the taxpaying plaintiffs in the cause, and with the commissioners of public utility district No. 1, who were defendants therein, as well as the district itself; and he was undoubtedly well acquainted with many, if not all, of the attorneys who drew the pleadings and represented the parties to this action at the trial, and we feel that the Honorable Judge John M. Wilson would have detected collusion if there was any, and, in the absence of any specific indication of collusion in the record, we deny the motion to dismiss this appeal and remand the cause to the trial court, with direction to dismiss the action, and turn our attention to the only question presented in the appeal.

Does chapter 227 of the 1949 Laws of Washington violate the following provision of the state constitution? "No bill shall embrace more than one subject, and that shall be expressed in the title."

Certain fundamental rules are applied by the court when a statute is challenged on the ground that it is in conflict with the constitution. One of these is, when the constitutionality of a statute is questioned, the burden rests upon the party attacking it to clearly establish its invalidity. That rule has been many times stated and applied by this court. We cite only two recent examples in which reference to many others may be found. *Union High School Dist. No. 1 v. Taxpayers of Union High School Dist. No. 1*, 26 Wn.

(2d) 1, ·172 P. (2d)˙ 591, decided in September, 1946, and *Gruen v. State Tax Commission,* 35 Wn. (2d) 1, 211 P. (2d) 651, sometimes called the soldiers' bonus case, decided in November, 1949.

▆ Another fundamental principle, which has been affirmed and repeated in numerous cases, including the soldiers' bonus case, *supra,* requires that, where a statute is open to two constructions, one of which will render it constitutional and the other, unconstitutional, the former construction, and not the latter, will be adopted. *State ex rel. Northern Pac. R. Co. v. Henneford,* 3 Wn. (2d) 48, 99 P. (2d) 616.

To determine the question before us, we must first consider the meaning of the constitutional provision which it is contended is violated by chapter 227, Laws of 1949. For convenience, we again quote the exact language of section 19 of Article 2 of the constitution: "No bill shall include more than one subject, and that shall be expressed in the title." That section was interpreted by this court as early as 1891 in an opinion delivered by the Honorable John P. Hoyt, and concurred in by the then chief justice and all of the associate justices, in the case of *Marston v. Humes,* 3 Wash. 267, 275, 28 Pac. 520. The opinion is so squarely in point as to the single question presented in this appeal that we feel it desirable to˙quote a goodly portion of its text:

" 'No bill shall embrace more than one subject, and that shall be expressed in the title.'

"How shall this provision be interpreted? What shall the word 'subject,' as used therein, be held to mean? Courts are bound to give such an interpretation to this provision as will make it reasonable and at the same time give it full force. There are two ways in which the words thus used can be interpreted. One is to hold that the word 'subject' is not capable of further reduction; the other is to hold that it means a single subject in a more enlarged sense, in which may be included a large number of sub-subjects. To hold that the constitution makers intended the first interpretation would be to convict them of an intention to so tie the hands of the legislature as to make legislation extremely difficult, if not impossible; while the other construction will substantially subserve the object which they had in view

and at the same time leave the legislature free to legislate in a reasonable manner. I am of the opinion that the legislature must be the judge of the scope which they will give to the word 'subject,' and that so long as the title embraces but one subject it is not inimical to such constitutional provision, even although the subject as thus used contains any number of sub-subjects. As I have suggested, any other rule would make legislation practically impossible. I do not suppose it will be contended that a title would be void which provided that the enactment was to be upon the subject of pleading. It will be admitted by almost every one that that was a single subject, yet if we construe the word in its more narrow sense it contains many subjects, and the title would be clearly bad, and the legislature would be driven to enact separate laws upon the subject of complaints, answers, replies, etc., etc. If we hold 'pleading' to be a sufficient identification and unification of the subject, it is because we say the legislature has seen fit to make that a single subject. Again, it would hardly be contended that it is not competent under the provision in question for the legislature to enact as a single law a code of civil procedure, and that an act entitled 'An act to provide a code of civil procedure' would be invalid, yet under this subject innumerable subheads and subjects can easily be carved out. Such title is good because the legislature has seen fit to take a comprehensive subject which can properly cover all of such subjects. If the legislature can thus by a name sufficiently comprehensive embrace all the subjects properly relating to civil procedure, it must follow that by adopting a subject sufficiently general it can embrace in one act all the statute law of the state. In other words, the legislature may adopt just as comprehensive a title as it sees fit, and if such title when taken by itself relates to a unified subject or object, it is good, however much such unified subject is capable of division. I have come to this conclusion, not only from the necessities of the case as they appear to me, but from such authorities as I have been able to find on that subject. Mr. Cooley, in his admirable work upon Constitutional Limitations, makes use of the following language:

" 'The generality of a title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be

employed in the title in defining it.' Cooley's Const. Lim. p. 144."

The foregoing is followed by further discussion, citing the opinions of many state courts of last resort.

The logical next step in the inquiry is to examine the title of chapter 227 of the Laws of 1949, which reads as follows:

"AN ACT *relating to the conservation, development and utilization of the state's electrical resources and of facilities for the generation, transmission and distribution thereof*; creating a state power commission and prescribing its powers and duties with respect to power and power facilities in the state; relating to .public utility districts, authorizing such districts to join in the exercise of certain powers vested in individual districts and providing for the joint acquisition of certain utility properties; relating to privilege taxes against, and the payment of certain obligations by, public utility districts, amending section 2, chapter 245, Laws of 1941, as amended, making an appropriation, and declaring an emergency as to section 1 hereof." (Italics ours.)

We have supplied the emphasis in the quotation because that portion of the title clearly states the general subject of the act is the state's electrical resources.

There are many other opinions in our reports which cite and follow the holding in the case of *Marston v. Humes*, 3 Wash. 267, 28 Pac. 520, from which we have hereinbefore quoted at length. We will not cite these cases since they can be easily located in the digests, and also because the *Marston* case, in and of itself, is sufficient authority for holding that chapter 227, Laws of 1949, does not violate section 19 of Article 2 of the state constitution. Furthermore, the rule of the *Marston* case, and the other cases applying it, is consistent with the general rule of the American courts. We quote from 50 Am. Jur. 178, Statutes, § 197:

"The constitutional prohibition of more than one subject in an act does not impose any limitation on the comprehensiveness of the subject, which may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject and not several. To constitute plurality of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair in-

tendment can be considered as having any legitimate connection with or relation to each other. Within the meaning of the constitutional provision, matters which apparently constitute distinct and separate subjects are not so where they are not incongruous and diverse to each other. Generally speaking, the courts are agreed that a statute may include every matter germane, referable, auxiliary, incidental, or subsidiary to, and not inconsistent with, or foreign to, the general subject or object of the act."

■ It seems very clear that chapter 227 of the Laws of 1949 does not violate section 19 of Article 2 of the state constitution, because an examination of the text of the chapter at once shows that every one of its seventeen numbered subdivisions deals with matters cognate to the general subject, "the state's electrical resources." The words "electric energy" appear thirteen different times in the act, and the words "hydro electric power" are used very frequently. In considering section 19 of Article 2 of the state constitution, we said, in *McQueen v. Kittitas County*, 115 Wash. 672, 681, 198 Pac. 394:

"Finally, it is contended that the act embraces more than one subject, and is thus in violation of art. 2, § 19, of the constitution which provides:

" 'No act shall embrace more than one subject, and that shall be expressed in the title.'

"But this provision of the constitution was intended to prevent the legislature from embracing in one act wholly unrelated subjects; it was not intended to prevent the enactment of a complete law on a given subject, even though the provisions of the law may be numerous and varied. The question then always is, does the act contain unrelated matters. Tested by the rule, we are unable to see that this act contains any provision not proper to be included in its subject as expressed by its title.

"The judgment is affirmed."

It is also said, in 50 Am. Jur. 180, Statutes, § 197:

"It has been said that there can be no surer test of compliance with the constitutional requirement of singleness of subject than that none of the provisions of an act can be read as relating or germane to any other subject than the one named in the title."

We are of the opinion that chapter 227 of the 1949 Laws of the state of Washington fully meets the tests suggested in the above quotations from the *McQueen* case, *supra,* and in section 197 of the article on "Statutes" in volume 50 of American Jurisprudence, and we therefore conclude that chapter 227 of the 1949 Laws of Washington does not violate section 19 of Article 2 of our state constitution.

The declaratory judgment and decree from which this appeal is taken will stand affirmed. It is so ordered.

MALLERY, GRADY, and HAMLEY, JJ., concur.

BEALS and DONWORTH, JJ., concur in the result.

SIMPSON, C. J., dissents.

SCHWELLENBACH, J. (dissenting)—I believe that the act is unconstitutional in that it contravenes Art. 2, § 19, of the state constitution, which provides:

"No bill shall embrace more than one subject, and that shall be expressed in the title."

The majority relies upon Wigmore on Evidence and *State ex rel. Reed v. Jones,* 6 Wash. 452, 34 Pac. 201, 23 L. R. A. 340, for the rule that the courts cannot consider legislative journals for the purpose of impeaching an enrolled bill, but only the enrolled bill itself. I agree with that rule. The *Jones* case held that the courts cannot go back of an enrolled bill to determine whether or not all proper steps were taken in its enactment; that an enrolled bill is itself conclusive evidence of its regular enactment. But this court has held many times that it can consider the legislative history of an act in order to determine the purpose of such legislation. This is especially true in considering its constitutionality. See *State ex rel. Troy v. Yelle,* 27 Wn. (2d) 99, 176 P. (2d) 459, 170 A. L. R. 1425; *State ex rel. Veys v. Superior Court,* 33 Wn. (2d) 638, 206 P. (2d) 1028.

I do not contend that the act under consideration was not regularly enacted. I contend that it is unconstitutional because it embraces two entirely different subjects.

February 5, 1949, the 27th day of the session, house bill No. 322 was introduced under the title: "An Act relating to public utility districts; authorizing any two or more districts to exercise jointly certain powers now vested in individual districts, and providing for joint acquisition of certain utility properties." This bill passed the House February 18th, the fortieth day.

On the same day house bill No. 561 was introduced. Its title read: "An Act relating to public utility districts; amending section 2, Chapter 245, Laws of 1941, as previously amended; and declaring an emergency."

In the meantime, on February 17th, there was introduced in the Senate, senate bill No. 301, with the title, "An Act relating to the conservation and development of the state's electrical resources, the financing of facilities for the generation, transmission, and distribution thereof, creating a Washington State Power Commission; prescribing its powers and duties and the compensation of its members; making an appropriation and declaring an emergency."

March 3rd, the fifty-third day of the sixty-day session, the House amended house bill No. 561 (the title of which was hereinbefore quoted), by adding sections 2 to 17, and by amending the title to read as it now appears in chapter 227 of the 1949 session laws. The amended bill was then passed by the House. March 8th, the fifty-eighth day of the session, house bill 561, as amended, was adopted by the legislature.

The majority quotes a statement from *Marston v. Humes*, 3 Wash. 267, 28 Pac. 520, as to the meaning of the word "subject" in the constitutional provision. There is no question but that general subjects such as taxation, workmen's compensation, labor relations, soldiers' bonus, etc., may contain sub-subjects which are germane to the general legislation considered. However, we are not confined to the title alone in determining whether or not the act contravenes the constitutional prohibition against containing more than one subject. We must consider the body of the act itself.

"Under the constitutional provision, a title is an indispensable part of every statute, and the expression of the

subject of the act must be found, if at all, in the words of the title. It must be clearly understood, however, that when a statute is attacked because of duality or plurality, the attack is upon the body of the act, not simply upon the caption. 'Plurality of title is not an objection to an act which deals with but one subject.' A title may limit the scope of an act, but it cannot broaden or extend the effect of the act as expressed in the body.

"The constitutional provision on titles, therefore, has two component parts. It limits legislation to a single general subject; it requires that this single subject be indicated in the title. In consequence, a statute may be attacked on either one or both of these grounds." 1 Sutherland Statutory Construction (3rd ed.) 299, § 1709.

Now let us briefly consider the act. Section 1 provides for taxing public utility districts. Section 2 permits two or more public utility districts to acquire jointly all or any part of certain electric utilities. (This section was enacted to meet the objections pointed out in *State ex rel. P.U.D. No. 1 of Skagit County v. Wylie,* 28 Wn. (2d) 113, 182 P. (2d) 706, and is the section under which the present action was brought.) Section 3 provides:

"Sec. 3. The Columbia River and its tributaries within the State of Washington and the rivers flowing from the watersheds of the Cascade and Olympic Mountains, and all other rivers and streams of the State of Washington in so far as they affect the hydroelectric power, are hereby declared to be natural resources of this state, and their development and use by the people of this state and of the United States is declared to be of public benefit. The creation and development of hydroelectric power from such rivers and streams in the interest of the people of this state and such natural resources, including the beds and waters of such rivers, the power and power sites in, upon or adjacent to the watersheds of such rivers, owned or controlled by the people of this state, or which may be recovered by or come within their ownership, possession and control shall always remain inalienable to and ownership, possession and control thereof shall always be vested in, the people of this state. The provisions of this act shall not apply to any river or stream covered by the provisions of chapter 9, Laws of 1949. As this natural resource so declared in this act is directly related with the natural resources of fisheries and game, no

permit for construction for the generation of power on any of the waters mentioned in this section shall hereafter be granted by the Supervisor of Hydraulics without the concurrence of the Director of Fisheries and the Director of Game."

That is a preamble to the Washington substitute for a Columbia Valley Authority.

Section 4 creates the Washington state power commission, a political subdivision of the state, exercising governmental and public powers, with the right to sue and be sued. Section 5 provides for the appointment of three members. Section 6 authorizes the commission to explore (a) the development and utilization of hydroelectric power in the state, (b) the present and potential hydroelectric resources of the state, and (c) the utilization and integration of electric facilities and requirements of the state.

Section 7 authorizes and directs the commission to acquire by lease, contract, purchase, or condemnation, all property necessary to operate dams, power houses, transmission lines, and to generate, produce, sell at wholesale, transmit and deliver such electric energy to qualified purchasers; and to establish rates which shall not be subject to regulation by the department of public utilities. Sections 8, 9, 10, 11, 12, 13, 14, 15 and 16 give powers to the commission to carry out the purposes of the act.

Then we have § 17, which provides that § 1 shall take effect immediately.

Turning again to the title, it will be seen that the first part is practically a replica of the title of senate bill No. 301, creating a Washington state power commission; that the second part is a replica of the title of house bill No. 322, permitting two or more public utility districts to jointly acquire certain utility properties; and that the third part refers to taxation of public utility districts.

Turning again to the act itself, § 1 provides for the taxation of public utility districts and § 17 provides that § 1 shall take effect immediately. Section 2 permits two or more public utility districts to jointly acquire certain utility properties. Sections 1, 2, and 17 refer to public utility dis-

tricts, municipal corporations authorized by the people when they adopted the public utility district initiative in 1930. Then we find § 3 to 16, inclusive, which make a complete and comprehensive state power authority, even to a preamble contained in § 3. No two subjects could be more repugnant to each other than public utility districts and a state power authority.

As proof that these subjects are repugnant to each other, it can be seen from the legislative history that the Senate would not pass the house bills relating to public utility districts, and that the House would not pass the senate bill creating a state power authority. So they compromised by putting these two strange bedfellows together in one act.

The majority emphasizes a portion of the title: "An Act *relating to the conservation, development and utilization of the state's electrical resources and of facilities for the generation, transmission and distribution thereof;*" and says that that portion of the title clearly states that the general subject of the act is the state's electrical resources. But an examination of the title of senate bill No. 301, where the same wording was used, shows that those words were merely preliminary to the real subject of the bill, which was the creation of a Washington state power commission.

The bill as enacted contains two subjects separate and distinct from each other and contravenes Art. 2, Section 19 of the state constitution.

The judgment should be reversed.

HILL, J., concurs with SCHWELLENBACH, J.

February 23, 1951. Petition for rehearing denied.