STATE of Missouri, Appellant.

v.

W. A. GETTY, Respondent.

No. 44126.

Supreme Court of Missouri.

Division No. 2.

Dec. 13, 1954.

John M. Dalton, Atty. Gen., Aubrey R. Hammett, Jr., Asst. Atty. Gen., for appellant.

Sater & Monroe, Monett, for respondent.

BROADDUS, Special Judge.

On October 7, 1953, the prosecuting attorney of Lawrence County filed an amended information charging that in said county on May 18, 1953, the defendant "did leave exposed meat and meat scraps containing poisonous substances accessible to dogs * * *." On November 12, 1953, defendant filed his motion to quash said information, which motion was on the same day sustained by the court below. Thereafter on November 18, 1953, the state filed notice of appeal to this court.

Defendant filed a motion in this court to dismiss the state's appeal. That motion was taken with the case. The ground set out in the motion is that "the prosecuting attorney did not pray an appeal to this court, and that the trial court did not grant an appeal as required by Section 547.210 R.S.Mo.1949 [V.A.M.S.]." That section provides that when an information is adjudged insufficient, "if the prosecuting attorney prays an appeal to an appellate court, the court may, in its discretion, grant an appeal." What the prosecuting attorney actually did was to follow our Rule 28.06, 42 V.A.M.S., which provides: "When the state has the right of appeal in any case, under Rule 28.04, an appeal shall be taken by filing a notice of appeal in the same manner and within the same time after final judgment as provided for in civil cases."

Defendant in his suggestions in support of his motion states that he has taken note of our Rules 28.04 and 28.06 (adopted January 1, 1953) and then says: "While this court's rule making authority is broad it is our understanding that there are certain matters which the rules of the court shall not change; that among these is the right of appeal. If it were to be held that by this court's rules no order of the trial court is required granting the appeal, then this court

by its rules has invaded the province of the trial court to exercise its just discretion as provided by the Legislature in Section 547.210 and has deprived defendant of a right granted him by the Legislature."

Let us see whether our Rule 28.06 has deprived him of any such right. Section 547.230 RSMo 1949, V.A.M.S., provides that: "If no *appeal* be taken by or *allowed* to the state in any case in which an appeal would lie on behalf of the state, the prosecuting attorney may apply for and prosecute a writ of error in the supreme court, in like manner and with like effect as such writ may be prosecuted by the defendant * *." (Emphasis ours.) Turning then to Section 547.080 we find that writs of error "are writs of right, and, on application therefor, shall issue of course * * *."

At the same time this court announced Rule 28.06 it also adopted Rule 28.02, which abolished writs of error in criminal cases, and provided that: "Review shall be by appeal." It is to be seen that prior to the adoption of Rule 28.02 the state had an absolute right (in a proper case) to a *review*. It could *pray* an *appeal* in the trial court and, if that was *not allowed,* it could prosecute a writ of error in this court.

■ Under Section 5 of Article V of our Constitution, V.A.M.S., this court may "establish rules of practice and procedure for all courts. The rules shall not change substantive rights * * * or the right of appeal." What is meant by the term "appeal"? The Kansas City Court of Appeals in State ex rel. Williams v. Anthony, 65 Mo.App. 543, 552, said it "means the removal of a suit * * * from an inferior to a superior court." This court in the case of Dorris Motor Car Co. v. Colburn, 307 Mo. 137, 158, 270 S.W. 339, 346 (in banc) said that it is often used as embracing "all kinds of proceedings for the review of cases—all proceedings commonly known as appellate." It was in that sense that the term was used in the above constitutional provision. It is apparent that this court thought so when it adopted the above rules. Note the word used in Rule 28.02—*Review.*

The constitutional provision did not prohibit this court from changing the *mode* of review, but only the *right.* As to the latter, no change occurred. Thus Rule 28.06 has not "deprived defendant of a right granted him by the Legislature." His motion is denied.

The information in this case is based upon Section 560.380 RSMo 1949, V.A.M.S. The pertinent part of the statute is as follows: "or shall maliciously expose any poisonous substance, with intent that the same shall be taken or swallowed by any cattle, hog, sheep, goat, horse, mule, ass or other domestic animal or domestic fowl."

The question presented is whether or not the words "or other domestic animal" as used in the above section, includes dogs. So far as the appellate courts of this state are concerned it is one of first impression. As stated, the trial court answered the inquiry in the negative.

The statute under which the defendant is charged, as originally passed in 1835, applied to "cattle" only. The section remained unchanged until it was repealed in 1919, and the present section enacted. The amendment of 1919 added the words "hogs, sheep, goat, horse, mule, ass or other domestic animal or domestic fowl." Laws 1919, p. 261.

■ At the outset it is to be kept in mind that in the construction of criminal statutes, it is a fixed rule that such statutes must be strictly construed against the state and liberally in favor of the defendant, and that no one is to be made subject to criminal prosecution by implication.

■ It is also a familiar rule of statutory construction that where an enumeration of specific things is followed by a more general word or phrase such general word or phrase should be construed to refer to things of the same kind or class.

■ No animal named in the statute is of the same class as the dog. He is of a different species—belongs to the canine family. The language used by the United

States Supreme Court in the case of Sentell v. New Orleans & C. R. Co., 166 U.S. 698, 17 S.Ct. 693, 694, 41 L.Ed. 1169, is applicable to the instant case. It is there said:

"By the common law, as well as by the law of most, if not all, the states, dogs are so far recognized as property that an action will lie for their conversion or injury [citing cases]; although, in the absence of a statute, they are not regarded as the subjects of larceny. [Citing cases.]

"The very fact that they are without the protection of the criminal laws shows that property in dogs is of an imperfect or qualified nature, and that *they stand,* as it were, *between animals ferae naturae,* in which, until killed or subdued, there is no property, *and domestic animals,* in which the right of property is perfect and complete. They are not considered as being upon the same plane *with horses, cattle, sheep, and other domesticated animals,* but rather in the category of cats, monkeys, parrots, singing birds, and similar animals, kept for pleasure, curiosity, or caprice." (Italics ours.)

Likewise applicable are the following words appearing in the opinion of the Supreme Court of Washington in the case of McQueen v. Kittitas County, 115 Wash. 672, 198 P. 394, loc. cit. 396: "It is true that the Legislature, for the purposes of the criminal statutes, has declared dogs to be personal property (Rem.Code, § 2303, subd. 11); but, notwithstanding this, *dogs do not stand on the same plane with horses, cattle, sheep, and other domesticated animals."* (Italics ours.)

In our study of the question presented we have read a great many cases. It is true that dogs have extensively become domesticated, so that it is usual and perhaps not an improper use of language to call them "domestic animals." However, we do not think that the Legislature by the 1919 amendment intended to include them within the term "other domestic animals." The Supreme Court of Wisconsin so construed a similar statute in the case of Skog v. King, 214 Wis. 591, 254 N.W. 354. In that case the defendant shot a dog while it was fighting with his own. The trial court took the view that there was no legal justification for the killing of the plaintiff's dog because the defendant did not show that plaintiff's dog was actually " 'found killing, wounding or worrying any horses, cattle, sheep, lambs or other domestic animals' " as provided in the statute of that state. The trial court was of the opinion that a dog is not a domestic animal within the meaning of the language " 'other domestic animals' " found in the statute. When the case reached the upper court the latter said: "It is our opinion that the trial court was right in concluding that the Legislature did not intend to include dogs within the language 'other domestic animals.' "

No aid can be found from the decisions of other states cited by the state in its brief. None are based upon statutes analogous to ours. For example, the Texas case cited, Manies v. State, 116 Tex.Cr.R. 542, 32 S.W.2d 470, is based upon a statute which specifically mentions dogs. The Georgia case, Wilcox v. State, 101 Ga. 563, 28 S.E. 981, 39 L.R.A. 709, is based upon the peculiar wording of the constitution authorizing the General Assembly to impose taxes upon " 'such domestic animals as, from their nature and habits, are destructive of other property.' " And the court properly held that the words "domestic animals," as there used, were intended to refer to dogs.

Construing the statute strictly against the state, as we are bound to do, we conclude that the learned trial court ruled correctly.

The judgment is affirmed.

LEEDY, Acting P. J., ELLISON, J., and BENNICK, Special Judge, concur.